UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWINELL, LLC et al., <br><br> Plaintiffs, <br><br> v. <br><br> JOSEPH MCCULLOUGH et al., <br><br> Defendants. | Case No. 2:23-cv-10029-SB-KS <br><br> ORDER DENYING MOTION TO DISMISS [DKT. NO. 59] |

  Plaintiffs Dwinell, LLC and Buckel Family Wine LLC are winegrowers who operate in Washington and Colorado. In this action, they allege that California's Alcohol and Beverage Control Act (ABC Act) discriminates against out-of-state wineries by permitting only in-state wineries to sell their wine directly to retailers and requiring that their out-of-state products enter the state through a licensed importer. Defendants move to dismiss Plaintiffs' Second Amended Complaint (SAC) for failure to state a claim under Rule 12(b)(6). Dkt. No. 59. The Court held a hearing on August 23, 2024 and heard argument from the parties. The Court denies Defendants' motion.

I.

  California's ABC Act governs the state's three-tiered licensing system for alcohol production, distribution, and sale: the first tier consists of growers and manufacturers, who may be licensed to sell their products to wholesalers; the second tier consists of licensed wholesalers, who are permitted to sell those products to retailers; and the third tier consists of retailers, who sell to consumers.

  Plaintiffs are wineries based in Washington and Colorado who want to sell their wine directly to California retailers. They bring this dormant Commerce Clause action challenging two features of the ABC Act that allegedly prevent them from doing so.

1

First, they challenge an exception that allows wineries with an in-state presence to bypass part of the three-tier structure and sell directly to retailers. The ABC Act provides that producers may sell directly to retailers if they obtain winegrower licenses. Cal. Bus. & Prof. Code § 23358(a)(1) ("Licensed winegrowers, notwithstanding any other provisions of this division, may also exercise the following privileges: (1) Sell wine and brandy to any person holding a license authorizing the sale of wine or brandy."). The statutory definition of winegrower, *id.* § 23013, and the provision for the issuance of a winegrower license, *id.* § 23770, do not distinguish between in-state and out-of-state wineries. However, the Department of Alcoholic Beverage Control and the California Attorney General have taken the position that only wineries with an in-state presence are eligible for winegrower licenses. Dkt. No. 58 ¶ 10. Specifically, Defendants construe §§ 23013 and 23358 as requiring a winery either to be located in and produce its wine in California or to maintain a physical premises, production facility, or warehouse in the state in order to qualify for a winegrower license. *Id.* ¶ 26. An out-of-state winery with no in-state presence cannot obtain a winegrower license and cannot sell their wine directly to a California retailer.

Plaintiffs meet all the requirements for a winegrower license under the ABC Act except that they do not have in-state premises. *Id.* ¶ 47. They allege that they would promptly apply for winegrower licenses if the in-state presence requirement were removed, and they identify four California retailers with whom they wish to contract directly to sell their wine if they can do so legally. *Id.* ¶ 49. Plaintiffs cannot afford to establish facilities in California merely to obtain winegrower licenses. *Id.* ¶ 45.

Second, Plaintiffs challenge the state's interpretation and enforcement of other provisions of the ABC Act that govern the importation of alcohol.[1] These provisions, Plaintiffs allege, would bar them from directly delivering to retailers *even if* they had winegrower licenses. Among the challenged provisions is a requirement that all out-of-state alcohol be brought into the state by common carriers and be consigned to a licensed importer. Cal. Bus. & Prof. Code § 23661(a). Because Plaintiffs have no presence in California and produce all their wine outside the state, they are required to use a licensed California importer to

---

[1] The challenged provisions are Cal. Bus. & Prof. Code §§ 23017(a)–(b), 23026, 23300, 23374, 23374.6, 23661(a), 23661.5, 23667, 23668, 23375.6, 23393, 23394, and 23775. Dkt. No. 58 ¶ 60.

distribute and sell their wine in California.  Notably, this provision applies to all out-of-state wine—even California wineries that seek to import wine from outside the state must use an importer.  Plaintiffs also challenge a provision barring retailers from obtaining an importer's license.  *Id*. § 23375.6.  Because retailers cannot obtain importer licenses, Plaintiffs would be unable to sell directly to retailers even if they had winegrower licenses—their wine would still have to enter the state through an importer.  Plaintiffs allege that these importer provisions add to their operation costs and force them to discount their prices or pass along the additional cost to the consumer.  *Id*. ¶ 32.

Taken together, these two features of the ABC Act—the in-presence requirement to obtain a winegrower license and the requirement that all out-of-state wine enter the state through an importer—result in a scheme where wineries with no presence in California are unable to sell directly to California retailers.  Plaintiffs allege that the implementation and enforcement of these provisions of the ABC Act discriminate against interstate commerce in violation of the Commerce Clause.  They seek injunctive and declaratory relief that would allow them to obtain winegrower licenses and sell their products directly to California retailers.

Defendants moved to dismiss Plaintiffs' first two complaints for lack of Article III standing and on the merits.  Dkt. Nos. 25, 32.  The Court found that the First Amended Complaint failed to adequately allege injury in fact but allowed Plaintiffs to amend their complaint after the parties met and conferred to clarify Defendants' position as to which statutory provisions they construed as preventing Plaintiffs from selling wine directly to California retailers.  Dkt. No. 50.  The SAC appears to have cured the Article III problems in Plaintiffs' prior pleadings.  Defendants move to dismiss the SAC only on the merits, arguing that the ABC Act does not discriminate against interstate commerce.  Dkt. No. 59.  In the alternative, Defendants request that the Court stay the action pending a decision by the Ninth Circuit in *Day v. Henry*, No. 23-16148 (9th Cir. 2024), which challenges in-state presence requirements for wine retailers under Arizona law.

II.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility" if the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In

resolving a Rule 12(b)(6) motion, a court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Assuming the veracity of well-pleaded factual allegations, a court must "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. There is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.*

### III.

#### A.

The Supreme Court has repeatedly held that "in all but the narrowest circumstances, state laws violate the Commerce Clause if they mandate differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Granholm v. Heald*, 544 U.S. 460, 472 (2005) (cleaned up). Courts ordinarily analyze dormant Commerce Clause claims using a two-step approach. The first-step inquiry is whether the statute "directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests." *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 579 (1986). If there is direct discrimination, there is a per se violation of the Commerce Clause. *Id.*; *Pharm. Rsch. & Mfrs. of Am. v. Cnty. of Alameda*, 768 F.3d 1037, 1041 (9th Cir. 2014). The second step of the inquiry applies to statutes that have "only indirect effects on interstate commerce and regulate[] evenhandedly." *Brown-Forman*, 476 U.S. at 579. In such cases, courts apply the balancing test from *Pike v. Bruce Church, Inc.* to determine whether the state has a legitimate interest and whether the burden on interstate commerce "clearly exceeds the local benefits." 397 U.S. 137, 142 (1970).

The Commerce Clause analysis includes additional considerations in challenges involving the sale and distribution of alcohol because they implicate the states' power to regulate alcohol under § 2 of the Twenty-First Amendment. In such cases, if the challenged provisions discriminate against interstate commerce, the court must consider "whether the challenged requirement can be justified as a public health or safety measure or on some other legitimate nonprotectionist ground." *Tennessee Wine and Spirits Retailers Assoc. v. Thomas*, 588 U.S. 504, 539 (2019).

In *Granholm* and *Tennessee Wine*, the Supreme Court analyzed how the dormant Commerce Clause doctrine applies to statutes regulating the sale and distribution of alcohol. In both cases, the Court invalidated restrictions on out-of-state entities' ability to sell alcohol within a state. *Granholm* challenged Michigan and New York laws that allowed in-state wineries to sell directly to in-state consumers but prevented out-of-state wineries from doing so. Under Michigan's three-tier scheme, wine producers were required to distribute their wine through wholesalers, who could only sell the wine to in-state retailers, who sold directly to consumers. Michigan law, however, provided an exception for in-state wineries, allowing them to obtain a license to directly ship their products to in-state consumers. *Granholm*, 544 U.S. at 469. New York law provided a similar exception to the state's three-tier system. Wineries that only produced wine from New York grapes could obtain a license to directly ship their products to in-state consumers. Out-of-state wineries could only ship directly to in-state consumers if they obtained a license, which required them to establish a branch factory, office, or storeroom in the state. *Id.* at 471. The Court held that both sets of laws violated the Commerce Clause by "grant[ing] in-state wineries access to the State's consumers on preferential terms." *Id.* at 474. In *Tennessee Wine*, the Court struck down a Tennessee provision imposing a two-year residency requirement for retail licenses because it "blatantly favor[ed] the State's residents and ha[d] little relationship to public health and safety." *Tennessee Wine*, 588 U.S. at 510.

B.

Plaintiffs have plausibly alleged that California's regulatory scheme similarly discriminates against interstate commerce. The Court considers both features of the ABC Act at issue—the in-state presence requirement for a winegrower license and the importer requirements for wine produced outside of California.

The in-state presence requirement to obtain a winegrower license directly discriminates against interstate commerce. Though the provision governing the issuance of a winegrower license does not discriminate against out-of-state wineries on its face, Cal. Bus. & Prof. Code § 23770, Defendants do not dispute that only wineries with an in-state presence are eligible for the license. The requirement clearly treats in-state and out-of-state wineries differently.

The statutes requiring out-of-state wine to enter the state through an importer present a more difficult question. Defendants argue that these requirements operate in an evenhanded manner because *all* out-of-state wine, regardless of

whether it is produced by a winery that has a presence in California, must enter the state through an importer.  A California-based winery that produces wine in another state, Defendants argue, would still have to use an importer to bring that wine into California.  The Court agrees that these provisions on their own are not facially discriminatory.  *See Orion Wine Imports, LLC v. Applesmith*, 412 F. Supp. 3d 1174, 1183 (E.D. Cal. 2019) (finding California importer requirement applies equally to in-state and out-of-state importers).  These are not like the provisions at issue in *Granholm* and *Tennessee Wine*, which the court found to be "obvious[ly]" discriminatory.  *Granholm*, 544 U.S. at 461.

However, the Court finds that Plaintiffs have pleaded sufficient facts to demonstrate discriminatory impact. Where a statute regulates evenhandedly, the court asks whether the burden on interstate commerce "clearly exceeds the local benefits." *Pike*, 397 U.S. at 142.  Plaintiffs sufficiently allege that the importer requirements impose significant burdens on interstate commerce, adding to their costs and hindering their ability to compete in the largest market for wine in the United States.  Dkt. No. 58 ¶ 33-39.  All of Plaintiffs' wine is produced out-of-state, and they "have no business reason to establish physical premises in California." *Id.* ¶ 45.  At this juncture, Defendants have not identified any specific local interests that would factor into the *Pike* balancing test.  Moreover, it is unclear whether Defendants' argument that the importer requirement equally affects in-state wineries is entirely hypothetical.  The SAC does not reference California winegrowers importing wine grown outside of California, and given that the defining characteristic of in-state wineries is that they produce wine in California, it is not obvious that those entities are likely to import wine from outside the state.  Regardless, on the existing record, Plaintiffs have also pleaded sufficient facts to allege discriminatory impact.

In sum, Plaintiffs' complaint describes a scheme where, like those in *Granholm*, out-of-state wineries are disadvantaged and are required "to become [] resident[s] in order to compete on equal terms." *Granholm*, 544 U.S. at 475 (quoting *Halliburton Oil Well Cementing Co. v. Reily,* 373 U.S. 64, 72 (1963)).  Taking the allegations in the SAC as true, Plaintiffs have no reason to establish physical facilities in California and therefore cannot compete on equal terms with California wineries.

C.

Defendants raise three principal arguments for dismissal.  None is persuasive.

1.

Defendants attempt to distinguish *Granholm* by emphasizing that out-of-state wineries are permitted to sell directly to California consumers, unlike the plaintiffs in *Granholm*. But the fact that California's ABC Act does not result in the exact form of discrimination *Granholm* addressed—allowing in-state producers but not out-of-state producers to ship wine directly to consumers—does not insulate it from challenges to other forms of discrimination against out-of-state producers. *See Tennessee Wine*, 588 U.S. at 534–35 (explaining that *Granholm*'s analysis was not limited to its particular facts). To the contrary, the driving principle in *Granholm* was broader—that the Commerce Clause "prohibits state discrimination against all out-of-state economic *interests*." *Id.* at 534 (cleaned up). Plaintiffs have plausibly alleged that the California regulatory scheme at issue—though it involves direct sale to retailers rather than consumers—discriminates against similar out-of-state interests.

2.

Defendants further argue that Plaintiffs fail to state a claim because the in-state and out-of-state wineries are not "similarly situated." *See Black Star Farms LLC v. Oliver*, 600 F.3d 1225, 1230 (9th Cir. 2010) ("For purposes of the dormant Commerce Clause . . . 'differential treatment' must be as between persons or entities who are similarly situated."). The purported difference is that only in-state wineries are subject to certain state regulations, and Plaintiffs would not be subject to those regulations if they were granted the requested relief. Defendants, however, do not identify or describe those regulations that only apply to in-state wineries, much explain the significance of any such regulations. Moreover, Defendants do not fully address whether their argument is consistent with *Granholm*, in which out-of-state wineries were able to bring a successful dormant Commerce Clause challenge.[2]

Defendants' argument relies on *Day v. Henry*, in which a district court in Arizona found that in-state and out-of-state wine retailers were not similarly situated because "[o]ut-of-state retailers without a physical premise in Arizona are

---

[2] Because Defendants have not cited or discussed any specific regulations applicable only to in-state wineries, the record in this case is, on this point, no different than the record in *Granholm*. Absent any discussion of the specific regulations at issue, and absent any meaningful attempt to distinguish *Granholm* based on such regulations, the Court declines to accept Defendants' argument.

not subject to any of the regulations that apply to Arizona's retailers, and they are not required to obtain alcohol from Arizona wholesalers or wholesalers under Arizona's oversight and regulation." 686 F. Supp. 3d 887, 895 (D. Ariz. 2023). *Day*, however, was decided on a motion for summary judgment with a full evidentiary record. Moreover, unlike Defendants in this case, the *Day* defendants cited and discussed the regulations that applied only to in-state retailers. *Id.* at 895 (noting that "[r]etailers with physical premises in Arizona are subject to . . . on-site liquor inspections, investigation of complaints, covert underage buyer programs, audits and other financial inspections, and investigation of records to determine compliance with Arizona liquor laws").

On this record, the Court finds that Plaintiffs have adequately alleged that they are similarly situated to in-state wineries—or, at least, Defendants have not shown otherwise. Plaintiffs have sufficiently alleged that they are competing in the same market as California wineries. Dkt. No. 58 ¶¶ 39, 44 (alleging Plaintiffs "want the opportunity to sell their wines directly to retailers in . . . California in order to fairly compete in the market."); *see Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1088 (9th Cir. 2013) (citing *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 299 (1997)) ("Entities are similarly situated for constitutional purposes if their products compete against each other in a single market."). Defendants do not argue that Plaintiffs and in-state wineries serve fundamentally different purposes or have fundamentally different business structures. *See National Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 527 (9th Cir. 2009) (rejecting dormant Commerce Clause challenge based on finding that opticians are not similarly situated to optometrists and ophthalmologists because they have different responsibilities, different purposes, and different business structures). Thus, the defense challenge to whether in-state and out-of-state wineries are similarly situated fails at the pleading stage.

3.

Nor does § 2 of the Twenty-First Amendment compel dismissal. Section 2 provides: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. Const. amend. XXI, § 2. Though the text of § 2 explicitly grants states authority to regulate the importation of wine, the Supreme Court has made clear that the Twenty-First Amendment does not "immunize[] discriminatory . . . laws from Commerce Clause scrutiny." *Granholm*, 544 U.S. at 488. Rather, § 2 must be "viewed as one part of a unified constitutional scheme." *Tennessee Wine*, 588 U.S. at 519–20. Thus,

courts "examine[] whether state alcohol laws that burden interstate commerce serve a State's legitimate § 2 interests," which do not include protectionism. *Id*. at 531.

Plaintiffs allege that "[d]enying out-of-state wineries a Winegrower license and requiring them to use a California importer, wholesaler, or warehouse to distribute their wines serves no legitimate public health or safety purpose." Dkt. No. 58 ¶ 53. Defendants have not shown that this allegation lacks "plausibility." *Twombly*, 550 U.S. at 557. Plaintiffs allege that they are bonded and subject to regulation, inspection, and approval by state and federal authorities. Defendants have not articulated what purpose is served by requiring Plaintiffs to sell their wine to California retailers through importers, particularly where the ABC Act permits Plaintiffs to sell wine directly to consumers. *See* Cal. Bus. & Prof. Code § 23661.3(a) (permitting in-state and out-of-state wineries to sell directly to consumers). It may be that they can identify and produce evidence of the need for such restrictions on summary judgment or at trial, but they have not done so at this stage.

Defendants cite three recent cases from other circuits to argue that the Twenty-First Amendment compels dismissal. These cases all upheld laws requiring an in-state presence for retailers. *See Sarasota Wine Mkt., LLC v. Schmitt,* 987 F.3d 1171 (8th Cir. 2021) (upholding requirement that licensed retailers be residents of Missouri, have physical presence in state, and buy liquor from in-state wholesalers); *Lebamoff Enterprises Inc. v. Whitmer*, 956 F.3d 863 (6th Cir. 2020) (upholding provision allowing in-state retailers to offer at-home deliveries but denying to out-of-state retailers); *B-21 Wines, Inc. v. Bauer*, 36 F.4th 214 (4th Cir. 2022) (upholding provision prohibiting out-of-state retailers from shipping directly to consumers). These courts noted that "a three-tiered system . . . is unquestionably legitimate" and concluded that the challenged provisions were "essential" features of that system. *See e.g.*, *Sarasota Wine Mkt., LLC,* 987 F.3d at 1184 (cleaned up). The record before this Court, however, does not compel the conclusion that the in-state presence requirement for winegrower licenses or the importer requirements are similarly integral parts of California's three-tier system. At this stage, Defendants have not proffered any justifications for the challenged provisions. Indeed, it is undisputed that California permits out-of-state wineries to sell directly to consumers and bypass the three-tier system altogether, raising a question about whether the challenged provisions are essential to the regulatory scheme. Cal. Bus. & Prof. Code § 23661.3(a). At this stage, the three out-of-circuit cases do not compel dismissal.

9

Because Plaintiffs have pleaded sufficient facts to plausibly allege a Commerce Clause violation, Defendants have not shown that they are entitled to dismissal of Plaintiffs' claims.

## IV.

Relying on the U.S. Supreme Court's decision in *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936), Defendants alternatively request that the Court stay its decision pending a Ninth Circuit decision in *Day v. Henry*, No. 23-16148, an appeal of the district court decision discussed above. Appellants challenge Arizona laws that allow in-state retailers to sell wine online to consumers but prevent out-of-state retailers from doing so unless they qualify for a license, which requires a physical presence in the state and operation of the store by an Arizona resident. The appeal has been fully briefed and is set to be heard in October 2024. Dkt. No. 66.

This Court has discretion to stay proceedings under *Landis* based on "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." 299 U.S. at 254. To determine whether to exercise its discretion, courts consider competing interests that will be impacted by a stay, including: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005). Only in "rare circumstances" will courts authorize a stay. *Landis*, 299 U.S. at 255.

This case does not present a rare circumstance. First, it is unclear that the *Day* appeal will be "concluded within a reasonable time." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979). Though oral argument is set for October, a decision may not be rendered for months. Until that time, Plaintiffs will be unable to implement their plans to sell their wine directly to California retailers. Because Plaintiffs are seeking injunctive and declaratory relief, timely resolution of the action is necessary to avoid continuing harm. Second, Defendants offer nothing more than a conclusory statement that they "would suffer hardship if . . . required to litigate this case under legal standards that may evolve." Dkt. No. 59 at 13. A bald assertion of hardship is insufficient to warrant a stay. *See Lockyer*, 398 F.3d at 1112 ("[B]eing required to defend a suit, without more, does not constitute a clear case of hardship or inequity within the

meaning of *Landis*.") (cleaned up).  Third, it is not clear that *Day*, which involves restrictions on retailers, not producers—a key distinction made by the district court in distinguishing *Granholm*—will control the Court's decision here.  While the Ninth Circuit's decision "may be instructive" on the issues presented in this case, Dkt. No. 59 at 1, that possibility alone does not justify a stay.

      Accordingly, the Court declines to exercise its discretion to stay the case for an undetermined amount of time based on the possibility that the Ninth Circuit's decision in *Day* might provide further guidance.

V.

      Because Plaintiffs have alleged sufficient facts to state a claim under the Commerce Clause and Defendants have not shown that a stay is warranted, the Court denies Defendants' motion.

Date: August 26, 2024

                                      Stanley Blumenfeld, Jr.
                                      United States District Judge