ROB BONTA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
SHIWON CHOE (SB 320041)
ROBERT L. MEYERHOFF (SB 298196)
CAROLYN F. DOWNS (SB 353455)
Deputy Attorneys General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 510-4400
 Fax:  (415) 703-5480
 E-mail:  Shiwon.Choe@doj.ca.gov
          Robert.Meyerhoff@doj.ca.gov
          Carolyn.Downs@doj.ca.gov
*Attorneys for Defendants Joseph McCullough, in
his official capacity as Director of the Department
of Alcoholic Beverage Control, and Rob Bonta, in
his official capacity as Attorney General of
California*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DWINELL, LLC, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**JOSEPH MCCULLOUGH, in his official capacity as Director of the Department of Alcoholic Beverage Control, et. al.,**<br><br>Defendants. | Case No. 2:23-cv-10029-SB-KES<br><br>**NOTICES OF MOTIONS AND JOINT BRIEF FOR (1) PLAINTIFFS' AND (2) DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>Date:       April 4, 2025<br>Time:       8:30 a.m.<br>Courtroom:  Courtroom 6C<br>Judge:      Hon. Stanley Blumenfeld, Jr.<br>Trial Date: April 25, 2025<br>Action Filed: June 6, 2023 |

1

# NOTICES OF MOTIONS

2    PLEASE TAKE NOTICE THAT on April 4, 2025, at 8:30 a.m., or as soon

3  thereafter as the matter may be heard before the Honorable Stanley Blumenfeld, Jr.,

4  in Courtroom 6C of the United States District Court for the Central District of

5  California, located at 350 West 1st Street, Los Angeles, California 90012:

6        1.  Plaintiffs Dwinell, LLC and Buckel Family Wine LLC will move

7            pursuant to Federal Rule of Civil Procedure 56 for summary judgment

8            in their favor, and

9        2.  Defendants Joseph McCullough, in his official capacity as Director of

10           the Department of Alcoholic Beverage Control, and Rob Bonta, in his

11           official capacity as Attorney General of California, will move pursuant

12           to Federal Rule of Civil Procedure 56 for summary judgment in their

13           favor.

14    The Parties' motions are based on this Notice, the accompanying Joint Brief,

15  Joint Appendix of Facts ("JAF"), Joint Appendix of Evidence ("JAE"), and Joint

16  Appendix of Statutes ("JAS"), the papers and pleadings on file in this action, and

17  such matters as may be presented to the Court at the time of the hearing.  These

18  motions are made following the conference of counsel on February 10, 2025,

19  pursuant to Local Rule 7-3 and the Court's Order re: Motions for Summary

20  Judgment, ECF No. 74.

21

22

23

24

25

26

27

28

i

Notices of Mots. and Joint Br. for Pls.' and Defs.' Mots. for Summary J. (No. 2:23-cv-10029-SB-KES)

Dated:  March 4, 2025

Respectfully submitted,

NELSON & FRANKEL LLP
EPSTEIN SEIF PORTER & BEUTEL LLP

*/s/ James A. Tanford\**
JAMES ALEXANDER TANFORD
ROBERT D. EPSTEIN
GRETCHEN M. NELSON
GABRIEL S. BARENFELD
*Attorneys for Plaintiffs Dwinell, LLC
and Buckel Family Wine LLC*

ROB BONTA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General

*/s/ Shiwon Choe*
SHIWON CHOE
ROBERT L. MEYERHOFF
CAROLYN F. DOWNS
Deputy Attorneys General
*Attorneys for Defendants Joseph
McCullough, in his official capacity
as Director of the Department of
Alcoholic Beverage Control, and Rob
Bonta, in his official capacity as
Attorney General of California*

* In accordance with Local Rule 5-4.3.4(a)(2)(i), the filer attests that all signatories
have concurred in the filing of this document.

ii

1

# TABLE OF CONTENTS

2

**Page**

3 TABLE OF AUTHORITIES ...................................................................... v

4 INTRODUCTION .................................................................................... 1

5      I.    Defendants' Introduction ............................................... 1

6      II.    Plaintiffs' introduction ................................................. 2

7 BACKGROUND ....................................................................................... 4

8      I.    Defendants' Background ............................................... 4

9          A.    Plaintiffs Have No Plans to Sell Wine to California Retailers ............................................................ 4

10

11          B.    Plaintiffs Nonetheless Challenge Dozens of ABC Act Provisions ............................................................ 4

12      II.    Plaintiffs' Background ................................................. 7

13 LEGAL STANDARD ............................................................................... 8

14 ARGUMENT .............................................................................................. 9

15      I.    Standing: Injury-In-Fact ............................................... 9

16          A.    Defendants' Position: Plaintiffs Lack Standing Because They Have No Concrete Plans to Violate Any Law and Thus No Injury-Injury-in-Fact ........................................................ 9

17

18          B.    Plaintiffs' Position: Plaintiffs have established injury ............ 11

19             1.    Injury ............................................................ 11

20             2.    Pre-enforcement cases ................................... 12

21      II.    Standing: Redressability ............................................... 16

22          A.    Defendants' Position: Plaintiffs Lack Standing Because Their Requested Relief—an Order Compelling ABC to Issue California Winegrower Licenses to Out-of-State Wineries and Declaring a Dozen ABC Act Provisions Unconstitutional—Is Beyond the Remedial Power of an Article III Court and Thus Not Redressable ................................. 16

23

24

25          B.    Plaintiffs' Position: Plaintiffs have established causation and redressability ............................................................ 21

26

27

28

iii

Notices of Mots. and Joint Br. for Pls.' and Defs.' Mots. for Summary J. (No. 2:23-cv-10029-SB-KES)

III. Dormant Commerce Clause ...................................................................... 24

    A.    Defendants' Position:  Plaintiffs Fail to Meet Their Burden of Establishing Through Substantial Evidence That the ABC Act Provisions They Challenge Are Discriminatory, and in Any Event, the ABC Act Provisions Are Justified on Nonprotectionist Grounds ........... 24

        1.    The Winegrower Licensing Requirements Are Not Discriminatory and Are Justified on Nonprotectionist Grounds ................................. 25

        2.    The Importer Requirements Are Not Discriminatory and Are Justified on Nonprotectionist Grounds ................................. 28

    B.    Plaintiffs' Position: Denying equal licensing privileges to out-of-state wineries is a straightforward violation of *Granholm* and *Tennessee Wine* ................................. 30

        1.    Precedents and legal framework .................................... 30

        2.    Argument ................................................................. 32

            (i)    Plaintiffs have established discrimination .......... 32

            (ii)    Defendants have not justified the discrimination.................................... 34

                (a)    The ban advances no health or safety purpose ................................. 35

                (b)    Licensing is a reasonable nondiscriminatory alternative ................... 37

IV. Remedies ................................................................................................ 40

    A.    Defendants' Position:  Plaintiffs Have Not Established That They Satisfy the Requirements for Winegrower Licenses, and Their Proposed Injunction Fails to Comply with the Specificity Requirements of Federal Rule of Civil Procedure 65(d) ................................................... 40

    B.    Plaintiffs' Position: The Court should declare the ban unconstitutional and enjoin its enforcement............................ 42

CONCLUSION............................................................................................. 43

    I.    Defendants' Conclusion.................................................................. 43

    II.    Plaintiffs' Conclusion .................................................................... 43

iv

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*4805 Convoy, Inc. v. City of San Diego,*
183 F.3d 1108 (9th Cir. 1999) ................................................................. 12

5

*Ayotte v. Planned Parenthood,*
546 U.S. 320 (2006) ................................................................... 16, 20

6

7

*B-21 Wines, Inc. v. Bauer,*
36 F.4th 214 (4th Cir. 2022) ........................................... 29, 34, 35

8

*Best & Co. v. Maxwell,*
311 U.S. 454 (1940) ................................................................... 33

9

*Black Star Farms LLC v. Oliver,*
600 F.3d 1225 (9th Cir. 2010) ................................... 24, 25, 32

10

11

*Bobka v. Toyota Motor Credit Corp.,*
968 F.3d 946 (9th Cir. 2020) ................................................... 23

12

*Buckel Family Wine, LLC v. Morrison,*
2014 WL 4513039 (Sep. 30, 2024) ......................................... 32

13

14

*Cal. Beer Wholesalers Ass'n, Inc. v. ABC App. Bd.,*
5 Cal. 3d 402 (1971) .......................................................... 5, 27

15

*Cal. Retail Liquor Dealers Ass'n v. Midcal Alum., Inc.,*
445 U.S. 97 (1980) ................................................................... 31

16

17

*Calif. Tow Truck Ass'n v. San Francisco,*
693 F.3d 847 (9th Cir. 2012) ................................................... 14

18

*Carney v. Adams,*
592 U.S. 53 (2020) .............................................................. 9, 10

19

20

*Clark v. City of Seattle,*
899 F.3d 802 (9th Cir. 2018) ................................................... 10

21

*Columbia Pictures Indus., Inc. v. Fung,*
710 F.3d 1020 (9th Cir. 2013) ................................................. 41

22

23

*Daramola v. Oracle Am., Inc.,*
92 F.4th 833 (9th Cir. 2024) ................................................... 17

24

*Day v. Henry,*
686 F. Supp. 3d 887 (D. Ariz. 2023),
*appeal docketed*, No. 23-16148 (9th Cir. Aug. 31, 2023) ........................... passim

25

26

*East Bay Sanctuary Covenant v. Trump,*
909 F.3d 1219 (9th Cir. 2018) ................................................. 43

27

28

v

*Elrod v. Burns*,
   427 U.S. 347 (1976)................................................................................11

*Exxon Corp. v. Gov. of Maryland*,
   437 U.S. 117 (1978)................................................................................33

*FDA v. Alliance for Hippocratic Medicine*,
   602 U.S. 367 (2024)...........................................................................11, 22

*Freeman v. Corzine*,
   629 F.3d 146 (3d Cir. 2012) ................................................................32

*FTC v. Qualcomm Inc.*,
   969 F.3d 974 (9th Cir. 2020) ..............................................................43

*Gen. Motors Corp. v. Tracy*,
   519 U.S. 278 (1997).......................................................................11, 26, 33

*Granholm v. Heald*,
   544 U.S. 460 (2005)........................................................................passim

*Hecox v. Little*,
   104 F.4th 1061 (9th Cir. 2024) ...........................................................42

*Hill v. Blind Indus. & Svs. of Md.*,
   179 F.3d 754 (9th Cir. 1999) ..............................................................13

*Hope v. Warden*,
   972 F.3d 310 (3d Cir. 2020) ................................................................40

*Hunt v. Wash. St. Apple Adv. Comm'n*,
   432 U.S. 333 (1977)................................................................................33

*Isaacson v. Mayes*,
   84 F.4th 1089 (9th Cir. 2023) .........................................................12, 14

*Italian Colors Rest. v. Beccera*,
   878 F.3d 1165 (9th Cir. 2018) .........................................................14, 15

*Juliana v. United States*,
   947 F.3d 1159 (9th Cir. 2020) ............................................................20

*Lebamoff Enters. Inc. v. Whitmer*,
   956 F.3d 863 (6th Cir. 2020) .........................................................passim

*Legal Aid Soc. of Alameda Cty. v. Brennan*,
   608 F.2d 1319 (9th Cir. 1979) ............................................................11

*LeVick v. Skaggs Co., Inc.*,
   701 F.2d 777 (9th Cir. 1983) ..............................................................13

*Libertarian Party of L.A. Cty. v. Bowen*,
   709 F.3d 867 (9th Cir. 2013) ..............................................................14

vi

*Loffman v. Cal. Dep't of Educ.*,
  119 F.4th 1147 (9th Cir. 2024) ................................................. 9

*LOS, Ltd. v. Stroh*,
  205 F.3d 1146 (9th Cir. 2000) ............................................... 15

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ...................................................... 11, 22

*M.S. v. Brown*,
  902 F.3d 1076 (9th Cir. 2018) ............................... 16, 17, 20, 21

*Matsumoto v. Labrador*,
  122 F.4th 787 (9th Cir. 2024). ............................................ 12, 13

*Mayfield v. U.S.*,
  599 F.3d 964 (9th Cir. 2010) .............................................. 22, 24

*Mecinas v. Hobbs*,
  30 F.4th 890 (9th Cir. 2022) ................................................ 11

*Melendres v. Maricopa Cty.*,
  897 F.3d 1217 (9th Cir. 2018) ............................................... 24

*Mugler v. Kansas*,
  123 U.S. 623 (1887) ......................................................... 31

*Murthy v. Missouri*,
  603 U.S. 43 (2024) ........................................................... 9

*Nat'l Ass'n of Optometrists & Opticians v. Harris*,
  682 F.3d 1144 (9th Cir. 2012) ............................................... 29

*Nat'l Meat Ass'n v. Deukmejian*,
  743 F.2d 656 (9th Cir. 1984) ............................................... 34

*Nat'l Pork Producers Council v. Ross*,
  6 F.4th 1021 (9th Cir. 2021),
  *aff'd*, 598 U.S. 356 (2023) ............................................ 24, 29

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*,
  210 F.3d 1099 (9th Cir. 2000) ............................................... 8

*North Dakota v. United States*,
  495 U.S. 423 (1990) .......................................................... 29

*Orion Wine Imports, LLC v. App[el]smith*,
  412 F. Supp. 3d 1174 (E.D. Cal. 2019) (*Orion I*),
  *aff'd*, 837 F. App'x 585 (9th Cir. 2021) .................................... 28

*Orion Wine Imports, LLC v. Appelsmith*,
  837 F. App'x 585 (9th Cir. 2021) (*Orion II*) ............................ 21, 32

*Peace Ranch, LLC v. Bonta*,
  93 F.4th 482 (9th Cir. 2024) .......................................... 9, 12, 13

vii

Notices of Mots. and Joint Br. for Pls.' and Defs.' Mots. for Summary J. (No. 2:23-cv-10029-SB-KES)

*Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador,*
122 F.4th 825 (9th Cir. 2024) .................................................................. 12

*Polar Ice Cream & Creamery Co. v. Andrews,*
375 U.S. 361 (1964) ................................................................................ 11

*Prudence Corp. v. Shred-It America, Inc.,*
365 F. App'x 859 (9th Cir. 2010) ........................................................... 22

*Reno Air Racing Ass'n, Inc. v. McCord,*
452 F.3d 1126 (9th Cir. 2006) ............................................................... 40

*Schmidt v. Lessard,*
414 U.S. 473 (1974) ................................................................................ 40

*Sessions v. Morales-Santana,*
582 U.S. 47 (2017) .................................................................................. 21

*Speigel v. Ryan,*
946 F.2d 1435 (9th Cir. 1991) ............................................................... 22

*Students for Fair Admissions, Inc. v. Pres. & Fellows of Harvard College,*
600 U.S. 181 (2023) ................................................................................ 24

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014) ............................................................................ 9, 12

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas,*
588 U.S. 504 (2019) .......................................................................... passim

*Thomas v. Anchorage Equal Rts. Comm'n,*
220 F.3d 1134 (9th Cir. 2000) (en banc) ...................................... 9, 12, 14

*Tingley v. Ferguson,*
47 F.4th 1055 (9th Cir. 2022) ................................................................ 13

*Triton Energy Corp. v. Square D Co.,*
68 F.3d 1216 (9th Cir. 1995) ................................................................... 8

*Trucking Ass'n v. Bonta,*
996 F.3d 644 (9th Cir. 2021) ................................................................. 13

*Tucson v. City of Seattle,*
91 F.4th 1318 (9th Cir. 2024) ..................................................... 11, 22, 23

*Unified Data Servs., LLC v. FTC,*
39 F.4th 1200 (9th Cir. 2022) ................................................................ 10

*Wash. Environ. Council v. Bellon,*
732 F.3d 1131 (9th Cir. 2013) ............................................................... 21

*West Lynn Creamery, Inc. v. Healey,*
512 U.S. 186 (1994) .......................................................................... 32, 33

viii

Notices of Mots. and Joint Br. for Pls.' and Defs.' Mots. for Summary J. (No. 2:23-cv-10029-SB-KES)

*WildEarth Guardians v. U.S. Forest Serv.*,
    70 F.4th 1212 (9th Cir. 2023) .................................................................9

*Wine Country Gift Baskets.com v. Steen*,
    612 F.3d 809 (5th Cir. 2010) ...............................................................26

**Statutes**

Ariz. Rev. Stat. § 4-205.04 ..............................................................36

Cal. Bus. & Prof. Code § 23001 ..........................................................4

Cal. Bus. & Prof. Code § 23001.5 ......................................................25

Cal. Bus. & Prof. Code § 23013 ....................................................7, 23

Cal. Bus. & Prof. Code § 23017 .........................................7, 8, 23, 42

Cal. Bus. & Prof. Code § 23026 ...............................................7, 8, 42

Cal. Bus. & Prof. Code § 23300 ......................................................6, 7

Cal. Bus. & Prof. Code § 23355 .........................................................42

Cal. Bus. & Prof. Code § 23356 ......................................................5, 7

Cal. Bus. & Prof. Code § 23358 ..................................................passim

Cal. Bus. & Prof. Code § 23362 ...............................................35, 37

Cal. Bus. & Prof. Code § 23374 ...............................................7, 8, 42

Cal. Bus. & Prof. Code § 23374.6 ............................................7, 8, 42

Cal. Bus. & Prof. Code § 23375.6 ............................................7, 8, 42

Cal. Bus. & Prof. Code § 23378 ...........................................................5

Cal. Bus. & Prof. Code § 23393 .........................................5, 7, 8, 42

Cal. Bus. & Prof. Code § 23394 ...............................................7, 8, 42

Cal. Bus. & Prof. Code § 23402 .........................................2, 7, 22, 23

Cal. Bus. & Prof. Code § 23661 ..................................................passim

Cal. Bus. & Prof. Code § 23661.3 ...............................................passim

Cal. Bus. & Prof. Code § 23661.5 .........................................7, 8, 23, 42

Cal. Bus. & Prof. Code § 23667 .........................................7, 8, 23, 42

Cal. Bus. & Prof. Code § 23668 .........................................7, 8, 23, 42

Cal. Bus. & Prof. Code § 23775 ...............................................7, 8, 42

Cal. Bus. & Prof. Code § 23784 ................................................................23

Cal. Bus. & Prof. Code § 23958 ..........................................................passim

Cal. Bus. & Prof. Code § 23987 ................................................................18

Cal. Bus. & Prof. Code § 25500 ........................................................23, 28

Cal. Bus. & Prof. Code § 25502 ................................................................28

Cal. Bus. & Prof. Code § 25503.11 ..........................................................23

Cal. Bus. & Prof. Code § 25607 ................................................................42

Cal. Rev. & Tax. Code § 32151 ..........................................................7, 23

Cal. Rev. & Tax. Code § 32220 ..........................................................7, 23

Or. Rev. Stat. § 471.274 ............................................................................36

Wash. Rev. Code § 66.24.206(1) ..............................................................36

**Rules**

Fed. R. Civ. P. 56(a) ....................................................................................8

Fed. R. Civ. P. 65(d) ............................................................................2, 40

Fed. R. Evid. 702 ......................................................................................36

**Constitutional Provisions**

U.S. Const. amend. XXI, § 2 ..............................................................2, 3, 6

x

## INTRODUCTION[1]

### I.    Defendants' Introduction

Plaintiffs are two out-of-state wineries who claim to want to sell wine to California retailers.  In reality, Plaintiffs have no actual concrete plans to do so.  Plaintiffs' Second Amended Complaint ("SAC") ¶ 49 listed four retailers that Plaintiffs claimed to have contacted—but in reality, Plaintiffs have never had any contact with any of them.  Nor have Plaintiffs ever contacted *any* California retailers about selling wine, much less made any plans to sell them wine.

Plaintiffs nonetheless challenge under the dormant Commerce Clause over a dozen separate statutory provisions of California's Alcoholic Beverage Control Act ("ABC Act"), which they claim impede their ability to pursue their nonexistent plans.  SAC ¶¶ 54-60.  As relief, Plaintiffs request (1) a declaration that the California Department of Alcoholic Beverage Control ("ABC") may not impose an in-state presence requirement for wineries applying for California ABC Type 02 "Winegrower" licenses, (2) an injunction compelling ABC to make out-of-state wineries eligible for California Winegrower licenses (and compelling ABC issue such licenses to Plaintiffs outright), and (3) a declaration that over a dozen other statutory provisions in the ABC Act are unconstitutional.  SAC Prayer for Relief a-e.

Defendants are entitled to summary judgment on Plaintiffs' flawed claims.  First, Plaintiffs lack an injury-in-fact sufficient to establish Article III standing.  As this Court held, Plaintiffs must have "a concrete plan to sell wine in California in a manner that violates the ABC Act" to have an injury-in-fact.  First MTD Order 8 (ECF No. 50).  Plaintiffs have never made any plan to sell wine to any retailer in a manner that violates the ABC Act.  Second, Plaintiffs have not demonstrated redressability sufficient to establish Article III standing.  Plaintiffs' proposed

---

[1] Both sides drafted their sections prior to the Ninth Circuit issuing its opinion in *Day v. Henry*, No. 23-16148 (9th Cir. Mar. 4, 2025).  The parties will address the Ninth Circuit's *Day* opinion in their respective replies.

1

remedy to effectively rewrite over a dozen statutes in the ABC Act and compel ABC to issue California licenses to, and maintain compliance over, out-of-state wineries with no in-state presence is beyond the power of an Article III court to order.  Third, on the merits, Plaintiffs fail to carry their burden that the laws they challenge violate the dormant Commerce Clause.  Out-of-state wineries are not subject to ABC's on-site investigations, compliance checks, and oversight, and thus their non-licensure does not constitute discrimination under the dormant Commerce Clause.  And the ABC Act's provisions requiring out-of-state wine to be imported into California through licensed importers apply equally to *all* wineries, including both wineries that have an in-state presence in California and wineries that do not.  Further, the Act's requirements serve legitimate nonprotectionist grounds and thus are constitutional under Section 2 of the Twenty-First Amendment.  Fourth, Plaintiffs' proposed remedies, even assuming they were within the Court's power to issue, are unwarranted here.  Plaintiffs' requested injunction to compel ABC to make out-of-state wineries "eligible" for California Winegrower licenses is unworkably vague and violates the specificity requirements of Federal Rule of Civil Procedure 65(d).  Plaintiffs' request to compel ABC to award them California Winegrower licenses is equally improper, particularly given that Plaintiffs have not established they actually satisfy the requirements for such licenses.  For any of these reasons, the Court should enter summary judgment in favor of Defendants.

## II.    Plaintiffs' introduction

This is a dispute over the constitutionality of a California liquor licensing rule that discriminates against out-of-state wineries. California requires a winery to have a Type 02 Winegrower license to sell its products directly to retailers, Cal. Bus. & Prof. Code (BPC) §§23358(a)(1); 23402, but the Department of Alcoholic Beverage Control (ABC) will issue Winegrower licenses only to wineries located in California -- not to out-of-state wineries. JAF 23, 27. The effect of this rule is that only in-state wineries may sell directly to retailers. Out-of-state wineries must go

2

Notices of Mots. and Joint Br. for Pls.' and Defs.' Mots. for Summary J. (No. 2:23-cv-10029-SB-KES)

1    through (and pay for) a separate importer and wholesaler, and may be excluded

2    altogether if they cannot find one. Giving local businesses preferential treatment

3    and shielding them from interstate competition is a textbook violation of the

4    Commerce Clause.

5         The State argues that the ABC's refusal to issue Winegrower licenses to out-

6    of-state wineries is protected by §2 of the Twenty-first Amendment, which gives

7    states broad regulatory authority over liquor. The Supreme Court has time and

8    again rejected this argument and made clear that state regulation of alcohol is

9    limited by the nondiscrimination principle of the Commerce Clause. A state may

10   discriminate against out-of-state liquor interests, including wineries, only if it

11   provides concrete evidence that the law advances a specific public health or safety

12   purpose and that no reasonable nondiscriminatory alternative would do the job. The

13   burden rests on the State and the Court says it is an exacting one. *Granholm v.*

14   *Heald*, 544 U.S. 460 (2005); *Tenn. Wine & Spirits Retailers Assoc. v. Thomas,* 588

15   U.S. 504 (2019).

16        The ABC cannot plausibly justify its refusal to issue Winegrower licenses to

17   out-of-state wineries. It already grants them Type 82 Direct Shipper permits, BPC

18   §23661.3. which allow those same out-of-state wineries to sell the same wine to the

19   same consumers. Defendants offer no evidence that this wine would suddenly

20   threaten public health and safety simply because it is sold through a California

21   retailer instead of directly to consumers. They have no evidence that wine produced

22   out of state and sold to California consumers has ever posed a public health or

23   safety problem, let alone that selling it through a retailer -- who can be monitored

24   and inspected -- would increase the risks and justify banning sales by one but not

25   the other. They have no evidence that the system of licensing, regulation and

26   oversight that the ABC uses to monitor direct-to-consumer sales safe would not

27   work equally well (or better) for sales through California retailers. The in-state

28   presence rule is unconstitutional.

3

Notices of Mots. and Joint Br. for Pls.' and Defs.' Mots. for Summary J. (No. 2:23-cv-10029-SB-KES)

# BACKGROUND

## I.    Defendants' Background

### A.    Plaintiffs Have No Plans to Sell Wine to California Retailers

In their complaint, Plaintiffs Dwinell LLC ("Dwinell") and Buckel Family Wine LLC ("Buckel") alleged they had contacted four California retailers about selling wine to them: (1) Wolfdale's, (2) Madrona Vineyards, (3) Arger Family Estate, and (4) Wine Country.  SAC ¶ 49.

In actuality, Plaintiffs never contacted any of these four retailers.  JAF 1-8. Two of these "retailers" do not even have retailer licenses: one (Madrona) has only a Winegrower license, not a retailer license, and one (Arger) has not had any license at all for over a decade.  JAF 9-10.  Nor have Plaintiffs ever contacted any other California retailer about selling wine.  JAF 11-12.  Plaintiffs have never made any plans to sell wine to any California retailer.  JAF 13-14.  During their respective depositions, Plaintiffs discussed how they conduct market research before engaging with a given retailer to see if the retailer is a good fit for their wine, and then enter into discussions with retailers before selling them wine.  JAF 15-18. Plaintiffs have never done so for any California retailer.  JAF 1-14.

### B.    Plaintiffs Nonetheless Challenge Dozens of ABC Act Provisions

The ABC Act, California Business and Professions Code ("BPC") division 9, § 23000 et seq., is over 600 pages long and contains hundreds of individual provisions governing the licensing and enforcement of the manufacture, importation, and sale of alcohol.  The purpose of the Act is to protect "the safety, welfare, health, peace, and morals of the people of the State, to eliminate the evils of unlicensed and unlawful manufacture, selling, and disposing of alcoholic beverages, and to promote temperance in the use and consumption of alcoholic beverages."  BPC § 23001.

To that end, California, like many States, regulates alcohol through a "three-tiered" licensing system, in which persons or entities may be licensed to

4

manufacture, sell, or distribute alcohol, BPC § 23300, and in which licensed manufacturers or growers (first tier) can sell alcohol to wholesalers (second tier), who in turn can sell to retailers (third tier), who in turn can sell to consumers. Second MTD Order 1 (ECF No. 76); BPC §§ 23356, 23378, 23393; JAE Ex. 6 (Erickson Decl.) ¶ 18.[2]

California, like other States, instituted the three-tier system after Prohibition to prevent the return of the tied-house and saloon system that plagued the nation prior to the Eighteenth Amendment. *Cal. Beer Wholesalers Ass'n, Inc. v. ABC App. Bd.*, 5 Cal. 3d 402, 407 (1971); JAE Ex. 6 (Erickson Decl.) ¶¶ 20-23. The tied-house system fostered a heavy drinking culture—low alcohol prices and the ubiquity of saloons meant more consumption, which led to domestic abuse, increased crime, and corrupted elections. JAE Ex. 6 (Erickson Decl.) ¶¶ 19-20. Following the end of Prohibition, States endeavored to adopt licensing and regulatory systems that would prevent the return of the tied-house system and its ills. *Id.* ¶ 26.

California's three-tier system for licensing and regulation does just that, by promoting healthy and safe alcohol consumption and ensuring that alcohol entering the State passes through relevant safeguards. Among other things, to promote a healthy and safe marketplace, the ABC Act provides that when a person or entity applies for an alcohol license, ABC "shall make a thorough investigation to determine whether the applicant and the premises for which a license is applied qualify for a license and whether the provisions of [the ABC Act] have been complied with," and "shall investigate all matters connected therewith which may affect the public welfare and morals." BPC § 23958. The Act requires ABC to deny a license application "if either the applicant or the premises for which a license is applied do not qualify for a license under this division," "if issuance of that license would tend to create a law enforcement problem," or "if issuance would

---

[2] Because this is a legal issue, Defendants did not include this or similar expert conclusions in the JAF and instead cite to the JAE directly. *See* MSJ Order 5 (ECF No. 74) (instructing parties not to include legal arguments in JAF).

5

Notices of Mots. and Joint Br. for Pls.' and Defs.' Mots. for Summary J. (No. 2:23-cv-10029-SB-KES)

result in or add to an undue concentration of licenses." *Id.* No one may participate in the sale of alcohol without a license. BPC § 23300.

Over the years, the Legislature has sought fit to add certain limited exceptions to the three-tier licensing system. For example, in 2005, the Legislature crafted a separate permitting system outside the licensing system, whereby out-of-state wineries without full California Winegrower licenses could apply for special "wine direct shipper permits" allowing them to sell wine directly to California consumers. BPC § 23661.3. In crafting this special permitting system, the Legislature also enacted a system wherein such out-of-state wineries have to register with the California Department of Tax and Fee Administration ("CDTFA") to pay the excise, sales, and use taxes that they otherwise would be circumventing by selling directly to consumers instead of going through the three-tier system. BPC § 23661.3(a)(5); JAE Ex. 7 (Barrow Decl.) ¶¶ 8, 11.

Another limited exception to the three-tier system is BPC § 23358(a)(1), which allows wineries with a California Type 02 Winegrower license to sell directly to California licensed retailers. As noted above, the ABC Act requires ABC to make a "thorough investigation" to determine whether both a license applicant and "the premises for which a license is applied" qualify for a license. BPC § 23958. ABC subjects applicants, licensees, and their premises to numerous reviews and requirements, including multiple on-site visits, which ABC does not have the capability or capacity to conduct for out-of-state premises. JAF 47-53.

Plaintiffs first seek to compel ABC to issue California Winegrower licenses to them and other out-of-state wineries. SAC ¶ 54, Prayer for Relief a-b. This alone would not allow Plaintiffs to sell to California retailers, however, as other provisions in the ABC Act require that all wine being imported into California— whether manufactured by a California-licensed Winegrower or not—be consigned to a licensed importer. BPC § 23661; *see* U.S. Const. amend. XXI, § 2 ("The transportation or importation into any State, Territory, or possession of the United

6

Notices of Mots. and Joint Br. for Pls.' and Defs.' Mots. for Summary J. (No. 2:23-cv-10029-SB-KES)

States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.").  So Plaintiffs expand their challenge to attack an additional dozen different provisions in the ABC Act.  SAC ¶¶ 56-60, Prayer for Relief c-d (challenging at least BPC §§ 23017, 23026, 23300, 23374, 23374.6, 23375.6, 23393, 23394, 23402, 23661, 23661.5, 23667, 23668, 23775).  Plaintiffs' challenge includes laws relating to importing, but is not limited to laws relating to importing.  To the contrary, Plaintiffs challenge laws that go to the heart of the alcohol-control system as a whole, including the law that establishes the licensing system to begin with.  BPC § 23300 ("No person shall exercise the privilege or perform any act which a licensee may exercise or perform under the authority of a license unless the person is authorized to do so by a license issued pursuant to this division.") (challenged by SAC Prayer for Relief d).

## II.    Plaintiffs' Background

a. Plaintiffs challenge the ABC's practice of denying Winegrower licenses to out-of-state wineries. The Winegrower license is established by BPC §§23013 and 23356. Holders of Winegrower licenses are given the privilege to sell directly to retailers by BPC §23358, "notwithstanding any other provisions." Retailers are authorized to purchase wine from anyone holding a Winegrower's license. *Id.* §23402. None of these statutes contains any language limiting the license or the sales privilege to in-state wineries, but Defendants interpret and apply them that way, refusing to issue Winegrower licenses to out-of-state wineries. JAF 27.

b. Plaintiffs do not challenge BPC §23300 that requires a license or Cal. Rev. & Tax §32151 and 32220 that require licensed Winegrowers to pay taxes.

c. Because BPC §23358 provides that the holder of a Winegrower license may sell directly to retailers "notwithstanding any other provisions," it should be unnecessary for Plaintiffs to challenge any other statutes. However, in prior proceedings, Defendants threatened to continue to ban direct-to-retailer sales by out-of-state wineries, even if they were issued Type 02 Winegrower licenses, by

7

applying BPC §23661(a) and related statutes concerning Importers, including §§23017(a-b), 23026, 23374, 23374.6, 23375.6, 23393, 23394, 23661(a), 23661.5, 23667, 23668, 23775. Therefore, Plaintiffs also challenge the constitutionality of applying those provisions to prohibit out-of-state wineries with Type 02 Winegrower licenses from selling directly to retailers, because it would perpetuate the discriminatory practice of allowing in-state, but not out-of-state, Winegrowers to sell directly to retailers.

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"[T]he moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "If [] a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [factfinder] could return a verdict in its favor." *Id.* An opinion by a witness, including an expert, may defeat summary judgement only if the witness has a concrete factual basis. *Id.* at 1222.

# ARGUMENT

## I.    Standing: Injury-In-Fact

### A.    Defendants' Position:  Plaintiffs Lack Standing Because They Have No Concrete Plans to Violate Any Law and Thus No Injury-Injury-in-Fact

"[A] citizen does not have standing to challenge a government regulation simply because the plaintiff believes that the government is acting illegally." *Loffman v. Cal. Dep't of Educ.*, 119 F.4th 1147, 1158 (9th Cir. 2024).  "Instead, the plaintiff must have a 'personal stake' in the case."  *Id.*  "[Plaintiffs] bear[] the burden of establishing standing as of the time [t]he[y] brought th[eir] lawsuit and maintaining it thereafter."  *Carney v. Adams*, 592 U.S. 53, 59 (2020).  "[S]tanding is not dispensed in gross."  *Murthy v. Missouri*, 603 U.S. 43, 61 (2024).  Rather, "'plaintiffs must demonstrate standing for each claim that they press' against each defendant, 'and for each form of relief they seek.'"  *Id.*

The irreducible minimum of Article III standing requires (1) injury-in-fact, (2) causation, and (3) redressability.  *WildEarth Guardians v. U.S. Forest Serv.*, 70 F.4th 1212, 1215 (9th Cir. 2023).  At the summary-judgment stage, plaintiffs must offer competent evidence and specific facts—not simply allegations—establishing each element of standing.  *Id.* at 1215-16.

As this Court held, "'[p]re-enforcement injury is a special subset of injury-in-fact.'"  First MTD Order 4 (quoting *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024)).  "[I]n a pre-enforcement challenge, 'a plaintiff satisfies the injury-in-fact requirement where he [establishes] "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder."'"  *Id.* (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)).  In order to satisfy that last factor—establishing a credible threat of prosecution—a plaintiff must, among other things, "have articulated a 'concrete plan' to violate the law in question[.]'"  *Id.* (quoting *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir.

9

2000) (en banc)); *accord, e.g.*, *Unified Data Servs., LLC v. FTC*, 39 F.4th 1200,
1210-11 (9th Cir. 2022) (holding that plaintiffs had no standing where they
provided no details of their plan to violate the law and "have not, in short, provided
any information about the 'when, to whom, where, or under what circumstances'");
*Clark v. City of Seattle*, 899 F.3d 802, 813 (9th Cir. 2018) (same).

Here, Plaintiffs complain that California law prohibits them from selling wine
directly to California retailers. To establish injury-in-fact, Plaintiffs must prove
through evidence that they had a concrete plan to sell wine directly to California
retailers. Generic allegations that Plaintiffs want to sell wine are not enough—
Plaintiffs must establish through evidence that, at the time they filed this lawsuit,
they had actual concrete plans, including "'when, to whom, where, or under what
circumstances' they would sell their wines." First MTD Order 7 (quoting *Unified
Data*, 39 F.4th at 1211).

Plaintiffs had no such plans. Plaintiffs never contacted any of the four
"retailers" listed in their SAC—two of which do not even have retailer licenses to
begin with. JAF 1-10.[3] Nor have Plaintiffs contacted any other California retailers
about wine, much less made any concrete plans to sell them wine. JAF 11-14.[4] As
this Court held, where, as here, Plaintiffs "do not suggest that they have already
attempted to contract with any retailers to carry their products, nor even when they
might do so," Plaintiffs lack an injury-in-fact and thus lack Article III standing.
First MTD Order 7; *see, e.g.*, *Unified Data*, 39 F.4th at 1210-11 ("mere 'some day'

---

[3] At most, Plaintiffs claim their litigation counsel might have contacted the
four retailers in their SAC—but Plaintiffs themselves know no details about those
contacts, much less have any concrete plans based on those contacts. JAF 19-20.
Additionally, any such contacts occurred only *after* Plaintiffs' original complaint—
Plaintiffs had made no such contacts when they first filed this lawsuit. JAF 21-22;
*cf. Carney*, 592 U.S. at 59 (plaintiff must establish standing "as of the time he
brought this lawsuit").

[4] While the owner of one Plaintiff (Buckel) claimed in deposition that he
used to work in California and supposedly had contacts with some unspecified
California retailers that he "would move forward to try"—future tense—to contact,
such "mere 'some day' intentions" are insufficient to establish standing. *Unified
Data*, 39 F.4th at 1210-11.

10

Notices of Mots. and Joint Br. for Pls.' and Defs.' Mots. for Summary J. (No. 2:23-cv-10029-SB-KES)

intentions" to violate law are insufficient to establish standing).  The Court therefore should grant Defendants summary judgment, because Plaintiffs have failed to establish subject-matter jurisdiction.

### B.    Plaintiffs' Position: Plaintiffs have established injury

The three elements of standing are (1) injury, (2) causation, and (3) redressability. *FDA v. Alliance for Hippocractic Medicine*, 602 U.S. 367, 379 (2024); *Tucson v. City of Seattle,* 91 F.4th 1318, 1325 (9th Cir. 2024). "Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements. So in those cases, standing is usually easy to establish." *FDA v. Alliance*, 602 U.S. at 382. *Accord Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561-62 (1992). Only one plaintiff needs standing to give the court jurisdiction. *Mecinas v. Hobbs*, 30 F.4th 890, 897 (9th Cir. 2022).

### 1.    Injury

There is no question that Plaintiffs have suffered an injury. They are being denied the right to engage in interstate commerce, JAF 27-30, which the Supreme Court holds is a personal right guaranteed by the Commerce Clause. *GMC v. Tracy*, 519 U.S. 278, 286 (1997). Loss of a constitutional right in itself is a concrete injury that supports standing. *FDA v. Alliance for Hippocratic Med.*, 601 U.S. at 381. The loss of constitutional rights "for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Both the Ninth Circuit and the Supreme Court define a person's right under the Commerce Clause as the *opportunity* to compete regardless of whether those opportunities would have paid off. *Legal Aid Soc. of Alameda Cty. v. Brennan,* 608 F.2d 1319, 1333-34) (9th Cir. 1979); *Polar Ice Cream & Creamery Co. v. Andrews*, 375 U.S. 361, 376 (1964). Plaintiffs have met this requirement. JAF 24, 29-31.

Plaintiffs have also suffered traditional economic injury. They are being prevented from selling wine directly to California retailers, which costs them the

11

1  profits they would otherwise have made.  JAF 30, 33. Plaintiffs' testimony that they

2  are losing money because the law forbids them from engaging in their normal

3  business activities establishes an economic injury sufficient for standing. *Isaacson*

4  *v. Mayes,* 84 F.4th 1089, 1096-97 (9th Cir. 2023) (citing cases).

5  <center>**2.    Pre-enforcement cases**</center>

6  When a plaintiff is challenging a law that imposes criminal or civil penalties,

7  but no penalty has actually been imposed, "a plaintiff satisfies the injury-in-fact

8  requirement where he alleges an intention to engage in a course of conduct arguably

9  affected with a constitutional interest, but proscribed by a statute, and there exists a

10  credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573

11  U.S. 149, 159 (2014). "[A]n actual arrest, prosecution, or other enforcement action

12  is not a prerequisite to challenging the law." *Id.* at 158. When plaintiffs challenge a

13  licensing requirement for which they are currently ineligible, testimony that they

14  intend to apply for that license is usually sufficient to establish standing to

15  challenge that restriction. *See 4805 Convoy, Inc. v. City of San Diego*. 183 F.3d

16  1108, 1113 (9th Cir. 1999).

17  Prior to *Driehaus*, this Circuit employed a more rigorous three-factor test for

18  pre-enforcement cases: (1) whether the plaintiffs have articulated a 'concrete plan'

19  to engage in conduct that would violate the law in question, (2) whether the

20  prosecuting authorities have communicated a specific warning or threat to initiate

21  enforcement proceedings, and (3) the history of past prosecution or enforcement

22  under the challenged statute. *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d

23  1134, 1139 (9th Cir. 2000) (en banc).

24  After *Driehaus*, the Ninth Circuit cases have been mixed. Some panels have

25  said that *Driehaus* "articulated a different framework, albeit incorporating part of

26  the essence of the Ninth Circuit test." *E.g., Peace Ranch LLC v. Bonta,* 93 F.4th

27  482, 487-90 (9th Cir. 2024); *Planned Parenthood Great Northwest, Hawaii,*

28  *Alaska, Indiana, Kentucky v. Labrador,* 122 F.4th 825 (9th Cir. 2024); *Matsumoto*

<center>12</center>

1   *v. Labrador,* 122 F.4th 787, 797 (9th Cir. 2024). That framework requires a

2   plaintiff to allege "an intention to engage in a course of conduct arguably affected

3   with a constitutional interest" but "proscribed by [the challenged] statute," *id.*

4   (brackets in original), and a "credible" threat of enforcement that turns on "the

5   enforcing authority's willingness to disavow enforcement." *Peace Ranch,* 93 F.4th

6   at 489-90; *Matsumoto v. Labrador,* 122 F.4th at 797. Under these cases, "a plaintiff

7   need only express 'the intention to engage in the proscribed conduct, were it not

8   proscribed.'" *Matsumoto v. Labrador*, 122 F.4th at 797. Others have continued to

9   apply the *Thomas* three-factor test. *E.g., Tingley v. Ferguson*, 47 F.4th 1055, 1067

10  (9th Cir. 2022); *Trucking Ass'n v. Bonta,* 996 F.3d 644, 652 (9th Cir. 2021).

11      Plaintiffs contend that this Court should apply the more recent *Peace Ranch*

12  standard articulated by the Ninth Circuit after *Driehaus,* and not *Thomas.* When a

13  Ninth Circuit precedent has been undermined by a recent Supreme Court decision, a

14  panel of "this court may reexamine that precedent without the convening of an *en*

15  *banc* panel." *Hill v. Blind Indus. & Svs. of Md.*, 179 F.3d 754, 762 (9th Cir. 1999);

16  *LeVick v. Skaggs Co., Inc.,* 701 F.2d 777, 778 (9th Cir. 1983). The more recent

17  decision then becomes the one that should be followed by the District Court. *Ibid*.

18  Plaintiffs easily meet the *Driehaus* test because they intend to apply for a license to

19  engage in interstate commerce, JAF 32, would sell to retailers were it not

20  proscribed, JAF 33. and the ABC has both asserted that it will not license out-of-

21  state wineries, JAF 27, and has not disavowed enforcement.

22      However, Plaintiffs acknowledge this Court's prior decision that *Driehaus* and

23  *Peace Ranch* did not significantly alter the *Thomas* three-factor test for standing, so

24  it was bound to apply the earlier *Thomas* opinion. Opinion on Mot. Dismiss at 6,

25  n.3 (ECF 50). Plaintiffs have also met the more stringent *Thomas* three-factor test.

26      1) *Concrete plan.* To demonstrate a concrete plan, Plaintiffs must provide

27  details about their intended conduct that make clear that if it were legal to do so,

28  they would engage in a particular business activity. They must specify in general

13

Notices of Mots. and Joint Br. for Pls.' and Defs.' Mots. for Summary J. (No. 2:23-cv-10029-SB-KES)

terms with whom and under what circumstances they would engage in the forbidden conduct. *Italian Colors Rest. v. Beccera*, 878 F.3d 1165, 1173-74 (9th Cir. 2018) (citing *Thomas* and other cases). This does not mean they must identify a specific person with whom they would do business. *Id.* (testimony plaintiff would charge "customers" a credit card surcharge if it were legal was sufficient).

Plaintiffs have testified to just such concrete plans. They described in their depositions in detail how they identify potential retail customers, contact and develop a relationship with their wine buyers, and offer their wines for sampling. JAF 33-40. They both identified a specific class of retailers they would market to. Buckel has contacts in California from when he worked at wineries there. JAF 37. Dwinell has retailers in California that already carry his beer. JAF 39. Both say that they have had past success finding retailers this way and it is likely they would do so in California. JAF 34, 38. One such retailer, The Wine Country, has already expressed an interest. JAF 73. Before any of the steps in these plans can be taken, Plaintiffs need a Winegrower license. They intend to obtain them. JAF 32. Plaintiffs do not need to have spent substantial time in a futile effort to arrange a specific sale to a specific retailer when the sale would be unlawful. Compliance with the law does not defeat standing. *Isaacson v. Mayes,* 84 F.4th at 1096.

2) *Enforcement threat.* To demonstrate a reasonable fear of enforcement, plaintiffs do not need to have been personally threatened. *Libertarian Party of L.A. Cty. v. Bowen,* 709 F.3d 867, 871 (9th Cir. 2013). They may show some combination of the government's active enforcement of a statute, *Thomas*, 220 F.3d at 1140, information posted on agency websites pointing out the restriction and/or incorporating it into an application form, *Libertarian Party, supra*, 709 F.3d at 871, and statements by officials about whether they do or do not enforce it. *Calif. Tow Truck Ass'n v. San Francisco,* 693 F.3d at 866. When officials are given the opportunity to disavow enforcement "the Government's failure to disavow application of the challenged provision is a factor in favor of a finding of standing."

14

*LOS, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000); *Italian Colors Rest. v. Becerra,* 878 F.3d at 1173 (Deputy Attorney General refused to stipulate to nonenforcement at summary judgment hearing).

Plaintiffs have shown a reasonable threat of enforcement and the ABC has conceded this point. In its Answer and discovery, the ABC admitted that it enforces the in-state presence rule and its General Counsel has confirmed as much. JAF 27, 41. The ABC has also acknowledged that Plaintiffs are aware of this. JAF 42. The ABC has posted a schedule of penalties that includes unlicensed sales. JAF 43. The ABC has never said it would not enforce.

3) *Past enforcement.* Evidence of recent past enforcement is relevant, but "enforcement history alone is not dispositive. Courts have found standing where no one had ever been prosecuted under the challenged provision." *LSO, Ltd. v. Stroh*, 205 F.3d at 1155 (citing cases). A concrete plan plus a threat of enforcement usually meets the case and controversy requirement unless there is a legitimate question of whether officials enforce it. *Italian Colors Rest. v. Beccera,* 878 F.3d at 1173-74. There is a difference between sparse enforcement of a restriction that rarely arises, and no enforcement of a law that has been 'commonly and notoriously' violated. *Id*.

Here, the State does not claim a practice of non-enforcement, that it routinely ignores the in-state presence restriction, or that any other out-of-state wineries have been able to get Winegrower licenses. Plaintiffs have presented evidence that the State enforces the licensing requirement, JAF 44-46, has stated that it will enforce this provision, JAF 27, and it is vigorously defending it in this case. That is sufficient.

15

Notices of Mots. and Joint Br. for Pls.' and Defs.' Mots. for Summary J. (No. 2:23-cv-10029-SB-KES)

**II.    Standing: Redressability**

    **A.    Defendants' Position:  Plaintiffs Lack Standing Because Their Requested Relief—an Order Compelling ABC to Issue California Winegrower Licenses to Out-of-State Wineries and Declaring a Dozen ABC Act Provisions Unconstitutional—Is Beyond the Remedial Power of an Article III Court and Thus Not Redressable**

Even assuming (counterfactually) that Plaintiffs had injury-in-fact, they lack Article III standing because they cannot establish redressability.  The remedy Plaintiffs seek—an order first compelling ABC to issue California Winegrower licenses to out-of-state wineries and then further declaring over a dozen different provisions of the ABC Act unconstitutional—is beyond the remedial power of the Court to order.  *Day v. Henry*, 686 F. Supp. 3d 887, 893 (D. Ariz. 2023) (quoting *Ayotte v. Planned Parenthood*, 546 U.S. 320, 329 (2006)), *appeal docketed*, No. 23-16148 (9th Cir. Aug. 31, 2023); *Lebamoff Enters. Inc. v. Whitmer*, 956 F.3d 863, 876 (6th Cir. 2020).

"To establish redressability, a plaintiff must show that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018).  "[E]ven where a plaintiff requests relief that would redress her claimed injury, there is no redressability if a federal court lacks the power to issue such relief."  *Id.*  "[N]ot all meritorious legal claims are redressable in federal court."  *Id.*  "This is so even where, as here, a plaintiff alleges constitutional violations."  *Id.*  Plaintiffs lack redressability where they "seek[] only remedies that would not be substantially likely to redress [their] claimed injury, or which are beyond the district court's remedial power to issue." *Id.* (citation omitted).

For example, in *M.S.*, the plaintiffs—Oregon residents who could not prove their legal presence in the United States—filed a lawsuit seeking to compel Oregon state officials to issue them driver's licenses.  *Id.* at 1079-80.  The Oregon legislature passed a bill authorizing issuance of limited-use "driver cards" to residents who could not prove their legal presence, but a voter referendum rejected

16

the bill, which thus never became law. *Id.* at 1080-81. The plaintiffs filed a lawsuit, alleging that the referendum and ensuing refusal by Oregon officials to issue them driver's licenses were unconstitutional and violated their due-process and equal-protection rights. *Id.* at 1081. Among other things, the plaintiffs sought a declaration that Oregon officials were authorized and required to issue them licenses. *Id.* at 1086. The Ninth Circuit held that the plaintiffs lacked redressability because the relief Plaintiffs sought—an order that Oregon officials had to issue the plaintiffs licenses when there was no state law requiring officials to do so—was beyond the power of an Article III court to issue. *Id.* ("[T]he district court lacks the power to issue such an intrusive declaration, which would amount to a requirement that the Governor effectuate a bill that never became law."). As the Ninth Circuit held, "structural constitutional limits prevent federal courts from ordering government officials to enact or implement a bill that has not completed a lawfully prescribed legislative process[.]" *Id.* at 1087.

Plaintiffs' request here for the more intrusive relief of an injunction compelling ABC to issue licenses to out-of-state wineries, together with a request for far broader declaratory relief (declaring over a dozen statutory provisions unconstitutional), similarly is beyond the Court's remedial power to issue. No enacted statute provides for ABC to issue California Winegrower licenses to out-of-state wineries. *See Daramola v. Oracle Am., Inc.*, 92 F.4th 833, 843 (9th Cir. 2024) (California statutes do not operate extraterritorially, absent clear intention to the contrary). Granting Plaintiffs their requested relief—compelling ABC to license out-of-state winegrowers—would impose burdens on ABC that it cannot shoulder, or alternatively would require the Court to substantially alter the statutory scheme outside of the legislative process, which is beyond the power of an Article III court to do. *M.S.*, 902 F.3d at 1089 ("[P]rinciples of federalism counsel against awarding affirmative injunctive and declaratory relief that would require state officials to

17

1    repeal an existing law and enact a new law proposed by plaintiffs.") (quotation

2    marks omitted).

3         Such rewriting would not be limited to a single statutory provision.  Rather, it

4    would require rewriting numerous provisions of the ABC Act and of ABC's

5    licensing operations.  To take but a few examples:

6    •    California law requires ABC to make a "thorough investigation" to

7         determine whether both the applicant and "the premises for which a

8         license is applied" qualify for a license, which entails on-site

9         investigations of such premises.  BPC § 23958; JAF 47-48.  ABC does

10        not have the capacity to conduct on-site investigations of out-of-state

11        premises.  JAF 49.  Plaintiffs' requested relief of compelling ABC to

12        issue California licenses to out-of-state wineries would require ABC to

13        perform investigative work far beyond the scope of what it is equipped

14        to do, or would require the Court to substantially rewrite BPC § 23958

15        to modify its requirements for out-of-state wineries.

16   •    ABC provides written notice of any new license application to

17        numerous specific local governing bodies.  BPC § 23987; JAF 48.  ABC

18        does not realistically have the ability to notify local governing bodies in

19        other States, and indeed these specific bodies might not even exist in

20        other States.  JAF 49; *see* BPC § 23987 (requiring notice to "board of

21        supervisors").  Plaintiffs' requested relief of compelling ABC to issue

22        California licenses to out-of-state wineries would require ABC to take

23        on this impracticable task, or would require the Court to substantially

24        rewrite BPC § 23987 for out-of-state wineries.

25   •    ABC conducts ongoing and unannounced compliance checks and site

26        visits, pursuant to statutory authority that allows its agents to act as

27        peace officers anywhere in California.  JAF 50, 52.  ABC does not have

28        the capacity to act similarly in other states.  JAF 51, 53.  Plaintiffs'

18

requested relief of compelling ABC to issue California licenses to out-of-state wineries would require ABC to take on a task for which it has no capacity, or would require the Court to substantially rewrite ABC's compliance procedures for out-of-state wineries.

- Even if ABC issued California Winegrower licenses to out-of-state wineries, this would not allow them to sell wine directly to California retailers.  Other provisions of the ABC Act require that alcohol imported into the State, whether manufactured by California licensees or not, be consigned to licensed importers.  BPC § 23661.  Plaintiffs' requested relief of compelling ABC to issue California licenses to out-of-state wineries thus would not afford them relief—they further would have to rewrite ABC Act's importation provisions as well.  *See* SAC ¶¶ 56-60, Prayer for Relief c-d (challenging over a dozen separate statutory provisions).

- California imposes a per-gallon excise tax on alcoholic beverages.  JAE Ex. 7 (Barrow Decl.) ¶ 6.  California law presumes that all wine imported into California will be imported by a winegrower or importer and that (as relevant here) the excise tax will be paid at the time the wine is first imported and received by that licensee, which aligns with the federal excise-tax system.  *Id.* ¶¶ 11-13.  There is no statute or mechanism that allows or provides for collection of this excise tax were out-of-state winegrowers to sell directly to California retailers.  *Id.* ¶ 14.  Plaintiffs' requested relief thus would require the Court to further rewrite the ABC Act and California tax law to add a new provision to allow for the collection of the excise tax.

"[I]t is beyond the power of an Article III court to order, design, supervise, or implement the plaintiffs' requested remedial plan" of first compelling ABC to issue California Winegrower licenses to out-of-state wineries and then rewriting or

19

redesigning each of the numerous other attendant statutes that Plaintiffs challenge. *See Juliana v. United States*, 947 F.3d 1159, 1171 (9th Cir. 2020) (plaintiffs lacked redressability where "any effective plan would necessarily require a host of complex policy decisions entrusted, for better or worse, to the wisdom and discretion of the executive and legislative branches"); *Ayotte*, 546 U.S. at 329 (courts must "restrain [them]selves from 'rewrit[ing] state law to conform it to constitutional requirements'" because "[courts'] constitutional mandate and institutional competence are limited").  The decisions of how to review applications and issue licenses; how to allocate time, money, staff, and resources toward review and compliance; and how the various interdependent provisions in the 600-plus-page ABC Act work together and might be changed, "must be made by the People's 'elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country.'" *Juliana*, 947 F.3d at 1172; *accord M.S.*, 902 F.3d at 1087.  As courts have held, specifically in the context of dormant Commerce Clause challenges to alcohol regulation, "rewrit[ing] the licensing and regulatory scheme to enable out-of-state [entities] to obtain a license. . . . [is] likely beyond the Legislature's intent and the Court's 'constitutional mandate and institutional competence.'" *Day*, 686 F. Supp. 3d at 893 (quoting *Ayotte*, 546 U.S. at 329); *accord, e.g.*, *Lebamoff*, 956 F.3d at 876.

        The fact that the Legislature might have created a separate permitting system for out-of-state wineries to sell wine to California consumers outside of the licensing system, *see* BPC § 23661.3, does not mean that the Court can grant Plaintiffs their requested relief.  The Legislature did not enact laws providing for *licensing* out-of-state wineries or address the complexities attendant in a licensing scheme, and the Legislature's creation of a permitting system does not empower the Court to create the licensing system that Plaintiffs request.  *M.S.*, 902 F.3d at 1086-87 (federal court may not "effectuate a bill that never became law" or "*order a state legislative body to enact legislation*") (emphasis in original).

20

As the Supreme Court has held, where, as here, plaintiffs complain of unequal treatment from being deprived of some benefit (here, the ability to sell wine to California retailers), a court is not free simply to expand the supposed benefit to the plaintiffs. *Sessions v. Morales-Santana*, 582 U.S. 47, 72 (2017). Rather, a court must evaluate whether the legislature would have broadened the exception to the plaintiffs (as opposed to, e.g., narrowing the exception for the alleged favored class), and in conducting this evaluation, must "consider the degree of potential disruption of the statutory scheme that would occur by extension as opposed to abrogation." *Id.* at 75. The fact that Plaintiffs ask only for extension, not abrogation,[5] does not mean that a court can grant an extension. Plaintiffs' proposed remedy to extend California Winegrower licensure to out-of-state wineries, and further to declare unconstitutional a dozen other ABC Act provisions, is profoundly disruptive and not within a court's power to order. *Id.* at 72; *see, e.g.*, *Lebamoff*, 956 F.3d at 876-77; *Day*, 686 F. Supp. 3d at 893-94. Plaintiffs therefore cannot establish redressability and thus lack Article III standing. *M.S.*, 902 F.3d at 1087, 1089. The Court should grant Defendants summary judgment, because Plaintiffs have failed to establish subject-matter jurisdiction, on this additional ground.

**B.    Plaintiffs' Position: Plaintiffs have established causation and redressability**

Causation and redressability "overlap and are 'two facets of a single causation requirement.'" *Wash. Environ. Council v. Bellon*, 732 F.3d 1131, 1146 (9th Cir. 2013). The injury here is caused solely by the ABC's refusal to issue licenses to out-of-state wineries. JAF 71. Plaintiffs would get licenses and sell their wine to retailers if they were eligible, JAF 32-22, and at least one California retailer is interested in buying it. JAF 73. When government regulations are the obstacle, and no third party is preventing Plaintiffs' actions, as in this case, redressability is easy

---

[5] Abrogation, of course, would provide Plaintiffs with no relief and thus cannot establish redressability. *Orion Wine Imports, LLC v. Appelsmith*, 837 F. App'x 585, 586 (9th Cir. 2021) (*Orion II*); *Day*, 686 F. Supp. 3d at 893.

21

Notices of Mots. and Joint Br. for Pls.' and Defs.' Mots. for Summary J. (No. 2:23-cv-10029-SB-KES)

1    to establish, *FDA v. Alliance*, 602 U.S. at 382, and "[a] plaintiff's burden to

2    demonstrate redressability is 'relatively modest,'" *Tucson,* 91 F.4th at 1325.

3    because there is ordinarily little question that a judgment prohibiting the defendant

4    from enforcing the regulation will redress the injury. *Lujan,* 504 U.S. at 561-62.

5    *Accord, Mayfield v. U.S.*, 599 F.3d 964, 971 (9th Cir. 2010).

6        Plaintiffs have established causation and redressability. JAF 54-75. Plaintiff

7    wineries meet the other criteria for a license. They make wine, have federal permits,

8    and have winemaking equipment and facilities. JAF 59-61. Their owners do not

9    hold an interest in a retail license. JAF 62-64. They have not had alcohol licenses

10   revoked, committed crimes, or violated the ABC Act. JAF 65-70. They would

11   apply for a Winegrower license if eligible, and market their wines to California

12   retailers. JAF 71-72. Once licensed, they would be authorized to sell to retailers,

13   BPC §23358(a)(1), and retailers could buy from them. *Id*. §23402. At least one

14   retailer is interested in doing so. JAF 73. They would register with the Department

15   of Tax and remit taxes. JAF 74. They would consult with the ABC about reporting

16   and other requirements and will comply with them. JAF 75.

17       Defendants assert that the Plaintiffs' injuries are not redressable for four

18   reasons, none of which has merit.

19       First, they contend that this Court lacks the power to require the ABC to issue

20   Winegrower licenses to Plaintiffs. To the contrary, courts routinely issue judgments

21   ordering a defendant to take action. *E.g., Speigel v. Ryan*, 946 F.2d 1435 (9th Cir.

22   1991) (make restitution), *Prudence Corp. v. Shred-It America, Inc.*, 365 Fed. Appx.

23   859 (9th Cir. 2010) (renew contract at specific royalty rate).

24       Second, they contend that this Court lacks the authority to rewrite numerous

25   statutes. The Court does not have to "rewrite" anything; it only needs to order the

26   ABC to enforce the statutes as written. The Winegrower licensing statutes do not

27   say that licenses may be issued only to in-state wineries. They authorize the

28   issuance of Winegrower licenses to "any person who has facilities and equipment

22

Notices of Mots. and Joint Br. for Pls.' and Defs.' Mots. for Summary J. (No. 2:23-cv-10029-SB-KES)

1  for the conversion of grapes, berries, or other fruit into wine and is engaged in the

2  production of wine." BPC §23013. The in-state requirement is imposed by the ABC

3  on its own initiative. JAF 27. The statutes then say that a Winergrower licensee

4  may sell to retailers "notwithstanding any other provision," *id*. §23358(a)(1), and

5  that retailers may purchase from "a person holding a ... wine grower's... license."

6   Third, Defendants contend that BPC §23661 and related statutes would require

7  that wine brought into the state must be delivered to a person holding an Importer

8  license, which retailers do not (and cannot) hold. See also §§23017(b), 23402,

9  23661.5, 23667, 23668, 23784, 25503.11, 25500(a)(1). Without an importer

10  license, retailers supposedly could not lawfully accept any deliveries. The plain text

11  of the statutes says otherwise. Holders of Winegrower licenses are explicitly

12  authorized to sell directly to retailers "*notwithstanding any other provisions of this*

13  *division," id*. §23358, which would exempt them from the importer statutes.

14  Retailers are explicitly authorized to receive wine from "a person holding a ...  wine

15  grower's" license. *Id*. §23402. Nothing in either provision limits direct-sale rights to

16  Winegrowers located in California. This specific authorization overrides the general

17  rule that wine coming into the state usually must be delivered to an importer. It is

18  an axiomatic principle of statutory construction that "the specific governs the

19  general." *Bobka v. Toyota Motor Credit Corp.*, 968 F.3d 946, 952 (9th Cir. 2020).

20   Fourth, Defendants contend that there is no mechanism for an out-of-state

21  Winegrower to pay taxes if the wine does not go first to an importer. To the

22  contrary, Cal. Rev. & Tax §§32151 and 32220 provide that the taxes may be paid

23  either by a "winegrower or importer," and Plaintiffs testify they will register and

24  pay the taxes. JAF 74.

25   Even if there were other statutes that might indirectly prevent out-of-state

26  wineries from delivering wine to retailers, it would not defeat redressability. Non-

27  redressability arises when another statute would continue to cause the same harm

28  *and the court lacks the ability to enjoin it. Tucson*, 91 F.4th at 1326. Because a

23

Notices of Mots. and Joint Br. for Pls.' and Defs.' Mots. for Summary J. (No. 2:23-cv-10029-SB-KES)

1  court has broad discretion in crafting the terms of an injunction to make its

2  judgment effective, *Melendres v. Maricopa Cty.*, 897 F.3d 1217, 1221 (9th Cir.

3  2018), nonredressability usually arises only when the harm is caused by

4  independent actors not before the court who could not enjoined. *Mayfield v. U.S.*,

5  599 F.3d at 971. To the extent that any of the Importer statutes could be interpreted

6  as indirectly prohibiting direct-to-retailers sales by out-of-state wineries who have

7  been given Winegrower licenses, the ABC can simply be enjoined from applying

8  them that way. No other agency is involved. It is axiomatic that "what cannot be

9  done directly cannot be done indirectly." *Students for Fair Admissions, Inc. v. Pres.*

10  *& Fellows of Harvard College*, 600 U.S. 181, 230 (2023).

## III.    Dormant Commerce Clause

### A.    Defendants' Position:  Plaintiffs Fail to Meet Their Burden of Establishing Through Substantial Evidence That the ABC Act Provisions They Challenge Are Discriminatory, and in Any Event, the ABC Act Provisions Are Justified on Nonprotectionist Grounds

15  Assuming (counterfactually) that Plaintiffs had established Article III

16  standing, Plaintiffs' dormant Commerce Clause challenge fails on the merits.

17  "[A] state law violates the dormant Commerce Clause only in narrow

18  circumstances." *Nat'l Pork Producers Council v. Ross*, 6 F.4th 1021, 1025 (9th

19  Cir. 2021), *aff'd*, 598 U.S. 356 (2023).  "[U]nless a state law facially discriminates

20  against out-of-state activities, directly regulates transactions that are conducted

21  entirely out of state, substantially impedes the flow of interstate commerce, or

22  interferes with a national regime, a plaintiff's complaint is unlikely to survive a

23  motion to dismiss," much less summary judgment.  *Id.* at 1033.  And at the

24  summary-judgment stage, "[p]laintiffs must offer substantial evidence of an actual

25  discriminatory effect in order to take advantage of heightened scrutiny and shift the

26  burden of proof to the State[.]"  *Black Star Farms LLC v. Oliver*, 600 F.3d 1225,

27  1233 (9th Cir. 2010).

28

24

Notices of Mots. and Joint Br. for Pls.' and Defs.' Mots. for Summary J. (No. 2:23-cv-10029-SB-KES)

Further, in the context of alcohol regulation, state laws additionally enjoy the protection of Section 2 of the Twenty-First Amendment, which "give[s] each State the authority to address alcohol-related public health and safety issues in accordance with the preferences of its citizens[.]" *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 539 (2019). While Section 2 does not insulate state laws from constitutional challenge, it does grant States "latitude with respect to the regulation of alcohol," so long as the State's regulation "can be justified as a public health or safety measure or on some other legitimate nonprotectionist ground." *Id.* at 533, 539. And where, as here, plaintiffs challenge multiple provisions of law that are severable from each other, *see* BPC § 23001.5 (ABC Act provisions are severable), courts "analyze [each] provision on its own." *Tenn. Wine*, 588 U.S. at 539.

Among the many aspects of the ABC Act that Plaintiffs challenge, Plaintiffs claim that the dormant Commerce Clause is violated by (1) the requirement that wineries have an in-state presence in California to obtain a California Type 02 Winegrower license and (2) the requirement that wine coming from out-of-state be consigned to a licensed importer. But Plaintiffs do not support their claims with substantial evidence sufficient to withstand summary judgment. The provisions are not discriminatory and do not violate the dormant Commerce Clause, and in any event are justified on legitimate nonprotectionist grounds.

### 1.    The Winegrower Licensing Requirements Are Not Discriminatory and Are Justified on Nonprotectionist Grounds

Plaintiffs have not met their burden to offer substantial evidence of an actual discriminatory effect here. As the Ninth Circuit has held, "'discrimination' simply means *differential treatment*," and "[o]f course, the 'differential treatment' must be as between persons or entities who are similarly situated." *Black Star Farms*, 600 F.3d at 1230 (emphasis in original); *accord, e.g.*, *Lebamoff*, 956 F.3d at 870

25

1   ("'[A]ny notion of discrimination assumes a comparison of substantially similar

2   entities.'") (quoting *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298 (1997)).

3       In the context of dormant Commerce Clause challenges to alcohol laws, courts

4   have held that in-state and out-of-state entities are not similarly situated where, as

5   here, the former are subject to a State's full regulations and the latter are not.  In

6   *Day*, for example, the court noted how Arizona retailers with physical in-state

7   premises were subject to Arizona's regulations, including "on-site liquor

8   inspections, investigation of complaints, covert underage buyer programs, audits

9   and other financial inspections, and investigation of records to determine

10  compliance with Arizona liquor laws," whereas out-of-state retailers were not, and

11  held that in-state and out-of-state retailers thus could not be considered similarly

12  situated for purposes of the dormant Commerce Clause.  *Day*, 686 F. Supp. 3d at

13  895-96.  The Fifth and Sixth Circuits similarly have recognized how in-state and

14  out-of-state entities "operate in distinct regulatory environments" and thus are not

15  similarly situated.  *Lebamoff*, 956 F.3d at 870-71 (noting retailers in Michigan and

16  Indiana "operate in distinct regulatory environments" in analyzing whether such

17  retailers are similarly situated); *Wine Country Gift Baskets.com v. Steen*, 612 F.3d

18  809, 820 (5th Cir. 2010) (holding out-of-state retailer "is not similarly situated to

19  Texas retailers and cannot make a logical argument of discrimination").

20      Plaintiffs have not met their burden to offer substantial evidence here that the

21  issuance of California ABC Winegrower licenses to in-state but not out-of-state

22  wineries is discriminatory, because in-state and out-of-state wineries are not

23  similarly situated.  The ABC Act and ABC's procedures subject in-state wineries to

24  numerous requirements, including on-site premises inspections, investigations of

25  complaints, investigations of records to determine compliance with California

26  liquor laws, and investigations into all matters relating to wineries that "may affect

27  the public welfare and morals."  BPC § 23958; JAF 48, 50.  By contrast, out-of-

28  state wineries are not, as ABC does not have the resources or capacity to subject

26

1  out-of-state wineries to the same requirements (nor necessarily the cooperation of

2  other States for ABC to conduct investigations of businesses within those sovereign

3  States' borders).  JAF 49, 51.  The fact that in-state wineries can obtain California

4  licenses after being subjected to California requirements and investigations and out-

5  of-state wineries cannot is not a dormant Commerce Clause violation.  To the

6  contrary, granting Plaintiffs their requested remedy of compelling ABC to issue

7  California licenses to out-of-state wineries that ABC could not subject to its

8  requirements would have the illogical result of favoring out-of-state wineries, who

9  would be able to "seize[] the sweet" of ABC licenses while "tak[ing] a pass on the

10  bitter" of being subject to the ABC compliance and oversight that comes with them.

11  *Cf. Lebamoff*, 956 F.3d at 873; *accord, e.g.*, *Day*, 686 F. Supp. 3d at 896-97 (in-

12  state premises requirement is not discriminatory).

13      Further, California's requirements are justified because they serve legitimate,

14  nonprotectionist interests.  *Tenn. Wine*, 588 U.S. at 539.  California's requirements

15  serve health, safety, and public morals in, among other things, allowing ABC

16  agents to investigate the premises where wine is being made to see if it is suitable

17  for winemaking; to examine the surrounding areas and see the effect of alcohol

18  manufacturing on nearby businesses, residential areas, schools, and churches; to

19  respond to and investigate complaints that the public might submit about alcohol

20  manufacturing; and to enforce any violations of law, including any violations of the

21  Penal Code and the Health and Safety Code, that ABC might encounter in

22  connection with wineries.  JAF 48, 50, 52.  California's legitimate interests also

23  include investigating possible tied-house conflicts to ensure compliance with anti-

24  tied-house regulations, to avoid a return to the tied-house system and the excessive

25  drinking and social ills prominent in the years before Prohibition.  JAF 48; *see Cal.*

26  *Beer Wholesalers*, 5 Cal. 3d at 407 (discussing ills of tied-house systems); JAE Ex.

27

28

27

Notices of Mots. and Joint Br. for Pls.' and Defs.' Mots. for Summary J. (No. 2:23-cv-10029-SB-KES)

6 (Erickson Decl.) ¶¶ 21-23, 30-31 (same).[6]  That ABC can subject in-state wineries to its requirements and enforce compliance as the "bitter" accompanying the "sweet" of licensure, but cannot subject out-of-state wineries to the same requirements and compliance and thus does not license them, is not discriminatory and serves legitimate nonprotectionist interests, and thus does not establish a dormant Commerce Clause violation.

### 2.    The Importer Requirements Are Not Discriminatory and Are Justified on Nonprotectionist Grounds

Similarly, Plaintiffs have not met their burden to offer substantial evidence that the ABC Act's importer requirement is discriminatory.

The requirement that out-of-state wine be imported into California through a licensed importer applies to "*all* out-of-state wine, regardless of whether it is produced by a winery that has a presence in California" or one that does not. Second MTD Order 5-6 (emphasis in original).  This requirement thus is not facially discriminatory. *Id.* at 6 (citing *Orion Wine Imports, LLC v. App[el]smith*, 412 F. Supp. 3d 1174, 1183 (E.D. Cal. 2019) (*Orion I*), *aff'd*, *Orion II*, 837 F. App'x 585).  At the pleading stage, the Court denied Defendants' motion to dismiss because it was unclear whether the importer requirement actually applied to in-state wineries or, conversely, whether in-state wineries only produce their own in-state wine and never actually import out-of-state wine, such that the importer requirement would be only hypothetical and never actually applied to them. *Id.*  At the summary-judgment stage, however, this is no longer hypothetical.  Indeed, one of the very entities to whom Plaintiffs claim to want to sell their wine is an in-state winery—Madrona Vineyards, JAF 9—which (if one were to credit Plaintiffs'

---

[6] While the ABC Act provision that allows Winegrowers to sell to retailers may be an exception to the three-tiered system, it is not a broad exception to tied-house prohibitions, which provide (among other things) that Winegrowers may not have any ownership, direct or indirect, of any retailer (aside from certain limited exceptions, in which the retailer either sells none of the Winegrower's wine or does so under very limited circumstances).  BPC §§ 25500, 25502.

28

1  claims about its alleged planned sales) confirms that in-state wineries do import

2  out-of-state wine, and as such are equally subject to the licensed-importer

3  requirement as out-of-state wineries are.  There thus is no discrimination.  Plaintiffs

4  complain that the importer requirement will increase the costs for them to import

5  their wine into California (just as it increases the cost for California wineries to

6  import out-of-state wine into California).  But "'[t]he mere fact that a firm engaged

7  in interstate commerce will face increased costs as a result of complying with state

8  regulations does not, on its own, suffice to establish a substantial burden on

9  interstate commerce.'" *Nat'l Pork*, 6 F.4th at 1032; *Nat'l Ass'n of Optometrists &*

10  *Opticians v. Harris*, 682 F.3d 1144, 1154-55 (9th Cir. 2012) ("a non-discriminatory

11  regulation [that] precludes a preferred, more profitable method of operating in a

12  retail market" does not violate dormant Commerce Clause).

13      The importer requirement also serves legitimate nonprotectionist interests.

14  California has a legitimate interest in protecting the health and safety of its citizens

15  through "'promoting temperance and controlling the distribution of alcohol.'"

16  *Lebamoff*, 956 F.3d at 871 (brackets omitted) (quoting *North Dakota v. United*

17  *States*, 495 U.S. 423, 433 (1990)).  To promote that interest, "States [have] virtually

18  complete control over whether to permit importation or sale of liquor and how to

19  structure the[ir] liquor distribution system[s]." *Granholm v. Heald*, 544 U.S. 460,

20  488 (2005).  California, like many other states, adopted a three-tier system to

21  prevent against the excessive drinking and social ills prominent in the years before

22  Prohibition.  JAE Ex. 6 (Erickson Decl.) ¶¶ 21-23, 30-31.  Importation of alcohol,

23  whether by a California entity or a non-California entity, must pass through the

24  three-tier system, including a licensed importer.  That California might have created

25  certain exceptions to the three-tier system does not mean that it may not enforce the

26  three-tier system here, as "there is no single 'one size fits all' three-tier system that

27  a state must either adhere to or abandon entirely." *B-21 Wines, Inc. v. Bauer*, 36

28

29

Notices of Mots. and Joint Br. for Pls.' and Defs.' Mots. for Summary J. (No. 2:23-cv-10029-SB-KES)

F.4th 214, 226 (4th Cir. 2022); *accord, e.g.*, *Day*, 686 F. Supp. 3d at 899 ("Creating
an exception is not abandoning the entire system.").

\*        \*        \*

Because Plaintiffs have not met their burden to establish through substantial
evidence that the ABC Act provisions they challenge are discriminatory, and
because the provisions serve legitimate nonprotectionist interests, Plaintiffs have
failed to establish a dormant Commerce Clause violation.  The Court therefore
should grant Defendants summary judgment.

**B.    Plaintiffs' Position: Denying equal licensing privileges to out-of-state wineries is a straightforward violation of *Granholm* and *Tennessee Wine***

**1.    Precedents and legal framework**

The framework for assessing the constitutionality of a discriminatory liquor
law, considering both the Commerce Clause and Twenty-first Amendment, is
controlled by *Granholm v. Heald*, 544 U.S. 460 (2005) and *Tenn. Wine & Spirits
Retailers Assoc. v. Thomas*, 588 U.S. 504 (2019). Those cases announced five basic
principles:

1)  State regulation of alcohol is limited by the nondiscrimination principle of
    the Commerce Clause. *Granholm,* 544 U.S. at 487**.** The Court "has
    repeatedly declined to read §2 as allowing the States to violate the
    'nondiscrimination principle.'" *Tenn. Wine*, 588 U.S. at 533.

2)  A discriminatory liquor law can be upheld only if the State proves that it
    is "reasonably necessary to protect [its] interests." *Id.* at 533.  The "burden
    is on the State to show that 'the discrimination is demonstrably justified.'"
    *Granholm*, 544 U.S. at 492.

3)  The only interest identified by the Court that can justify discrimination is
    the need "to address alcohol-related public health and safety issues," *id*. at
    539, in order to "regulat[e] the health and safety risks posed by the
    alcohol trade." *Id*. at 535. The Court has ruled that most other state

30

1   interests are not sufficient to justify *discrimination*, including maintaining

2   oversight over liquor store operators, ensuring responsible sales practices

3   and familiarity with local law, *Tenn. Wine,* 588 U.S. at 542, facilitating

4   orderly market conditions, ensuring regulatory accountability, and

5   monitoring sales and taxes, *Granholm, 444 U.S. at* 491-92, because these

6   objectives "can also be achieved through the alternative of an evenhanded

7   licensing requirement." *Id.*

8   4) To meet its burden, the State must present "concrete evidence" that the

9   exclusion of out- of-state wineries "actually promotes public health or

10  safety" and "that nondiscriminatory alternatives would be insufficient."

11  *Tenn. Wine*, 588 U.S. at 540; *Granholm*, 544 U.S. at 489-90, 492.

12  "[S]peculation [and] unsupported assertions are insufficient to sustain a

13  law that would otherwise violate the Commerce Clause." *Tenn. Wine* at

14  539.

15  5) The State's purported justification should be given careful scrutiny

16  because not "every statute enacted ostensibly for the promotion of the

17  public health [or] safety is to be accepted as a legitimate exertion" of state

18  authority. *Tenn. Wine,* 588 U.S. at 538 (citing *Mugler v. Kansas*, 123 U.S.

19  623, 661 (1887). The Court has called this an "exacting standard,"

20  *Granholm,* 544 U.S. at 493, requiring "careful scrutiny." *Cal. Retail*

21  *Liquor Dealers Ass'n v. Midcal Alum., Inc*., 445 U.S. 97, 110 (1980). It

22  has not specifically defined the exact level of scrutiny required, other than

23  to say it is something less than strict scrutiny that would be used in a pure

24  Commerce Clause case, *Tenn. Wine*, 588 U.S. at 539, but more than

25  lenient or deferential review that would be given to nondiscriminatory

26  laws. *Id.* at 513, 536.

27  There are no obvious Ninth Circuit precedents. State liquor laws have been

28  challenged under the Commerce Clause in two cases, but neither involved a

31

discriminatory law or sales from wineries to retailers. *Black Star Farms v. Oliver*, 600 F.3d 1225 (9th Cir. 2010) involved a nondiscriminatory law that prohibited wineries from selling directly to consumers if they produced more than 20,000 gallons per year, which applied equally to in-state and out-of-state wineries. *Orion Wine Imports, LLC v. Applesmith,* 837 Fed. Appx. 585 (Mem) (9th Cir. 2021) is a non-precedential memorandum opinion concerning how importers distribute wine from foreign countries that was dismissed on standing grounds. The opinion was issued after the plaintiff went out of business.

There is one case from the Third Circuit and one district court decision from Iowa on the constitutionality of state laws like this one that allowed in-state, but not out-of-state, wineries to sell to retailers. Both ruled in favor of the plaintiffs and held those laws unconstitutional. *Freeman v. Corzine*, 629 F.3d 146, 151-52, 159-61 (3d Cir. 2012). *Buckel Family Wine, LLC v. Morrison*, 2014 WL 4513039 (Sep. 30, 2024) (not appealed by State).

## 2.    Argument

### (i)    Plaintiffs have established discrimination

The ABC issues Winegrower licenses only to in-state wineries and not to out-of-state wineries. JAF 23, 27. This is obviously discriminatory on its face. Discrimination for Commerce Clause purposes simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. *Granholm*, 544 U.S. at 472. California wineries may sell to retailers without using a separate importer and wholesaler. JAF 78. Out-of-state wineries must use an importer and wholesaler, JAF 79, which costs substantially more. JAF 81. The ability to make direct sales at a lower cost gives California wineries a competitive advantage in a marketplace where price matters to customers. JAF 83-86. Protecting local industry "from the rigors of interstate competition is the hallmark of the economic protectionism that the Commerce Clause prohibits." *West Lynn Creamery, Inc. v. Healey*, 512 U.S. 186, 205 (1994). The Supreme Court has

32

already ruled that restricting licenses to in-state wineries only violates the non-discrimination principle of the Commerce Clause. *Granholm,* 544 U.S. at 473-74. An "in-state presence requirement runs contrary to our admonition that States cannot require an out-of-state firm 'to become a resident in order to compete on equal terms.'" *Id.* at 475 (citation omitted).

Discrimination occurs both "[w]hen a state statute directly ... discriminates against interstate commerce [and] when its *effect* is to favor in-state economic interests over out-of-state interests." *Granholm,* 544 U.S. at 487 (emphasis supplied). In each case the question is "whether the statute under attack, whatever its name may be, will in its practical operation work discrimination against interstate commerce." *West Lynn Creamery,* 512 U.S. at 201. The application of the Importer provisions to out-of-state wineries would have the same effect as the direct ban on licensing -- it would prohibit out-of-state wineries from selling directly to retailers while allowing in-state wineries to do so. The fact that a few in-state wineries might also be affected by it does not make it nondiscriminatory. Discrimination exists when a state law alters conditions of competition to favor in-state interests, *Hunt v. Wash. St. Apple Adv. Comm'n,* 432 U.S. 333, 350–51 (1977), and "the effect ... is to cause local goods to constitute a larger share, and goods with an out-of-state source to constitute a smaller share, of the total sales in the market." *Exxon Corp. v. Gov. of Maryland,* 437 U.S. 117, 126 n. 16 (1978). Few, if any, in-state wineries would be affected but all out-of-state wineries would be shut out of the market altogether. Therefore, the Importer requirement also meets the definition of discrimination.

A finding of discrimination requires that in-state and out-of-state entities must be similarly situated. Similar does not mean identical, of course, and the Supreme Court holds that businesses selling the same product to the same consumers are similarly situated. *GMC v. Tracy*, 519 U.S. at 298-99; *Best & Co. v. Maxwell,* 311 U.S. 454, 456 (1940). The Ninth Circuit holds that in-state and out-of-state

33

Notices of Mots. and Joint Br. for Pls.' and Defs.' Mots. for Summary J. (No. 2:23-cv-10029-SB-KES)

1   producers who produce the same product are similarly situated. *Nat'l Meat Ass'n v.*

2   *Deukmejian*, 743 F.2d 656, 660 (9th Cir. 1984). Plaintiffs are wineries producing

3   and selling wine, JAF 60-61, just like California wineries. Indeed, in *Granholm,* the

4   Court deemed in-state and out-of-state wineries sufficiently similarly situated to

5   find that denying licenses to out-of-state wineries was discriminatory. 544 U.S. at

6   476. The fact that they may be subject to different regulatory environments was

7   irrelevant in *Granholm* and is irrelevant here.

8                 **(ii)    Defendants have not justified the discrimination**

9         If the product were anything other than alcohol, the inquiry would end here.

10   State laws that discriminate against interstate commerce face "a virtually per se rule

11   of invalidity." *Granholm*, 544 U.S. at 476. But because the product is alcohol the

12   Twenty-first Amendment is also implicated, so a different inquiry is required. *Tenn.*

13   *Wine*, 588 U.S. at 539. This does not mean the State has blanket authority to

14   discriminate against out-of-state interests. The Twenty-first Amendment did not

15   "repeal the Commerce Clause for alcoholic beverages." *Granholm*, 544 U.S. at 487.

16   Rather, it gives the State the opportunity to justify its need to discriminate by

17   producing concrete evidence that imposing more onerous restrictions on out-of-

18   state alcohol is the only reasonably effective way to protect public health or safety.

19         All aspects of a state's "regulation of alcohol [are] limited by the

20   nondiscrimination principle of the Commerce Clause." *Granholm*, 544 U.S. at 486-

21   87. Some other circuits have departed from this principle and suggested that some

22   features of the three-tier system (separating producers, distributors and retailers into

23   separate tiers) are "essential" and immune from scrutiny. They cite *dictum* in

24   *Granholm* said that "[w]e have previously recognized that the three-tier system

25   itself is 'unquestionably legitimate.'" *Id*. at 489. *See, e.g., B-21 Wines, Inc. v.*

26   *Bauer*, 36 F.4th 214, 227-29 (4th Cit. 2022).

27         The cases are not germane for three reasons: First, they upheld in-state

28   presence requirements for retailers, not producers, because they thought retailers

34

Notices of Mots. and Joint Br. for Pls.' and Defs.' Mots. for Summary J. (No. 2:23-cv-10029-SB-KES)

were more essential to the system. They acknowledged that their "essential
elements" exemption would not apply to producers because of *Granholm*. *Id*. at
229. Second, the Supreme Court rejected the argument that some elements of a
state's three-tier system are exempt from Commerce Clause scrutiny in *Tenn. Wine*,
holding that it "reads far too much" into the *dictum*, which "did not suggest that §2
sanctions every *discriminatory* feature that a State may incorporate into its three-
tiered scheme. 588 U.S. at 535 (emphasis added). Third, California has no three-tier
system for wine. JAF 87. Wine does not need to pass through a separate wholesaler.
Wine producers may sell directly to consumers, BPC §23661.3, or to retailers, *id*.
§23358(a)(1), may simultaneously hold both a manufacturing and a retail license,
*id*. §23362, and is not subject to the tied-house requirement. JAF 88.

### (a)    The ban advances no health or safety purpose

The question is not whether regulation of alcohol in general advances health
and safety, but whether prohibiting out-of-state wineries from selling to retailers
does. The State has presented no proof that it does and the assertion is implausible.
California already issues Type 82 Direct Shipper licenses to out-of-state wineries.
Buckel has one. JAF 89. That license already allows Buckel to sell the same wines
to the same consumers. BPC 23661.3. Defendants admit they have no evidence that
any such direct sales have ever posed a public health and safety problem. JAF 90.
The expert witnesses agree. JAF 91-92. It is therefore inconceivable that giving out-
of-state wineries licenses to sell wine to retailers would pose any threat to public
health or safety. Indeed, sales that go through in-state retailers would obviously
pose less risk than sales directly to consumers. Retailers are subject to inspections
and on-site enforcement activities where the wine from an out-of-state winery could
be inspected, taxed, checked for safety and alcohol content, and sales could be
monitored. JAF 93. Sales made directly to consumers pass through no such
inspection site. Defendants present exactly zero evidence to explain why they

1  prohibit out-of-state wineries from selling wine to heavily regulated retailers but

2  allow them to sell to unregulated consumers.

3      The health and safety risks associated with alcohol are tied to consumption.

4  JAF 95-96. Defendants present no evidence that allowing out-of-state wineries to

5  sell directly to retailers would increase consumption and the evidence shows it does

6  not. Several neighboring states allow out-of-state wineries to obtain a license and

7  sell directly to retailers, Ariz.Rev.Stat. §4-205.04(7); Or.Rev.Stat. §471.274; Rev.

8  Code Wash. §66.24.206(1), and all have lower per capita wine consumption than

9  California. JAF 97-100.

10     Defendants assert somewhat vaguely that in-state wineries are subject to

11  various investigations and regulations that might be more difficult to enforce if the

12  winery were located in another state and might result in some unspecified kind of

13  public health or safety problem. That is not concrete evidence that sales to retailers

14  poses an actual alcohol-related threat that must be curtailed by banning all such

15  sales. "'[M]ere speculation' or 'unsupported assertions' are insufficient to sustain a

16  law that would otherwise violate the Commerce Clause." *Tenn. Wine*, 588 U.S. at

17  538, *quoting Granholm*, 544 U.S at 490, 492. The evidence shows that on-site

18  inspections and enforcement activities by the ABC are primarily aimed at deterring

19  sales to minors, JAF 101, which is not an issue here. None of thr ABC's on-site

20  enforcement activities appear to be related to the safety of the wine itself.

21     Defendants offer the expert report of Pamela Erickson that alcohol

22  consumption in general is a threat to public health and that regulation in general is

23  important. No one disputes that. She also offers some opinions that interstate sales

24  to retailers could increase those risks, that the State might not be able to prevent

25  them, and that California lacks the resources to regulate out-of-state wineries.

26  Those conclusions do not meet the basic requirements of Fed. R. Evid. 702 because

27  they are either legal opinions or speculation unsupported by facts or data and based

28  on a misunderstanding of California laws. JAF 102. The closest she comes to an

36

opinion on public health and safety is to speculate that wine shipped from out-of-state wineries might risk spoilage if they do not use refrigerated trucks like wholesalers do, but she presents no basis for assuming what kinds of trucks wholesalers use. JAF 103. There are 3,186 wholesalers in California, JAF 104, and Erickson presents no basis for assuming they all use refrigerated trucks, or that retailers do not, or that refrigeration matters, or even what she means by "spoilage." Besides, to the extent that improper shipping might cause spoilage, it would be true for all wine whether shipped in-state or interstate and whether shipped to a retailer or a consumer.

Finally, Defendants offer arguments that "the three-tier system" is designed to prevent tied houses and promote public health and safety. The argument is irrelevant because California does not have a three-tier system for wine. Wineries may sell directly to consumers (one tier), JAF 87, or to retailers to sell to consumers (two tier). JAF 24. Using the full three-tier distribution system (producer to wholesaler to retailer) is optional. Nor does California prohibit "tied houses." Wineries are exempt, JAF 88, and may concurrently hold licenses in both production and retail tiers -- the classic definition of a tied house. BPC §23362. Even if California's system could be characterized as a three-tier system, it would not be a defense. The Supreme Court has already held that "subjecting out-of-state wineries, but not local ones, to the three-tier system" is discriminatory, *Granholm*, 544 U.S. at 474-75, and cannot be justified by invoking regulatory accountability, ease of monitoring sales, and facilitating tax collection, because these objectives "can also be achieved through the alternative of an evenhanded licensing requirement. *Granholm,* 544 U.S. at 491-92.

### (b)    Licensing is a reasonable nondiscriminatory alternative

The Supreme Court is clear. In order to justify discrimination, the State must prove that reasonable nondiscriminatory alternatives would be ineffective.

37

*Granholm*, 544 U.S. at 489; *Tenn. Wine,* 588 U.S. at 540. This is somewhat of an academic exercise since Defendants have not shown that sales by out-of-state wineries to retailers pose any public health or safety threat to begin with. It is hard to demonstrate the effectiveness or ineffectiveness of nondiscriminatory alternatives at minimizing nonexistent risks. But we acknowledge that all alcohol consumption poses health and safety risks and needs to be regulated, regardless of the sources, so we address the question of reasonable nondiscriminatory alternatives even if Defendants do not.

The obvious nondiscriminatory alternative is a licensing system that imposes restrictions and regulations on sales and requires consent to jurisdiction as a condition for keeping the license. California already uses this system to safely regulate sales from out-of-state wineries to consumers under a Direct Shipper license. See BPC §23661.3. The Supreme Court has endorsed a licensing system is a reasonable nondiscriminatory alternative to a total ban. *Granholm*, 544 U.S. at 492. The out-of-state location is irrelevant because California allows Winegrowers to file reports and tax returns electronically. https://www.abc.ca.gov/licensing/winegrowers-blenders-report/ (annual report); https://www.cdtfa.ca.gov/services/online-filing-instructions.htm (tax returns). All licensees are now managed online by the ABC License Administrators. https://www.abc.ca.gov/winegrowers-blenders-reports-completely-online-for-license-administrators/ (web sites viewed February 27, 2025). Background checks can be done electronically. *Tenn. Wine*, 588 U.S. at 541. Proximity to schools and churches can be determined on Google Maps. On-site inspections can be done by Zoom or other video system. California used this process during Covid. JAF 105. Defendants present no evidence of any safety-related regulation, inspection or enforcement activity that cannot be done if the winery is outside the state, or any activity that needs to be done on the premises of a winery when it sells to retailers (but not when it sells to consumers).

38

1    Defendants and their witnesses assert in general terms that they lack the

2    resources and jurisdiction to regulate and inspect out-of-state wineries for

3    accountability. The same argument was also made in *Granholm*. See Brief of State

4    of New York, 2004 WL 2190371 at *32-33. It was rejected as insufficient

5    justification for banning sales by out-of-state wineries because "ensuring regulatory

6    accountability... can also be achieved through the alternative of an evenhanded

7    licensing requirement." 544 U.S. at 492. In this case, the resources argument is

8    objectively false. The budget of the California ABC last year was $102.7 million,

9    and the Department of Finance was authorized to provide up to $20.5 million more

10   if there is a budgetary shortfall. JAF 106. The previous year, $48.5 million went

11   unspent. JAF 107. Besides, the ABC's revenue comes primarily from license fees,

12   which the ABC can in increase if necessary to make up any additional regulatory

13   expenses, as it has done the last two years. JAF 108.

14   The State has supplied no evidence that direct sales to consumers by these

15   same out-of-state wineries has caused any public health or safety risk or that any

16   specific problem has ever been found in an inspection of an in-state winery's

17   premises that could not have been detected when the wine reached retail shelves. It

18   has not even shown that the ABC regularly inspects in-state wineries for health and

19   safety in the production process. JAF 94. Most enforcement activities are directed

20   at retail locations to deter sales to minors. JAF 101. The Supreme Court says that it

21   is the State's burden to justify discrimination, *Granholm,* 544 U.S. 492, and if they

22   do not produce substantial concrete evidence, they "fall[] far short of showing that

23   the [in-state] requirement for license[s] ... is valid." 588 U.S. at 543.

24

25

26

27

28

39

## IV.   Remedies

### A.   Defendants' Position:  Plaintiffs Have Not Established That They Satisfy the Requirements for Winegrower Licenses, and Their Proposed Injunction Fails to Comply with the Specificity Requirements of Federal Rule of Civil Procedure 65(d)

Even assuming (counterfactually) that Plaintiffs had evidence sufficient to establish standing and to prevail on the merits of their claims, Plaintiffs' proposed injunctions fail to comply with the specificity requirements of Federal Rule of Civil Procedure 65(d) and thus are improper.

Rule 65(d) states that:

> Every order granting an injunction . . . must:
> (A) state the reasons why it issued;
> (B) state its terms specifically; and
> (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.

"'[T]he specificity provisions of Rule 65(d) are no mere technical requirements.  The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood.'" *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1132 (9th Cir. 2006) (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)).  "The language of Rule 65 is exacting[.]" *Id.* at 1133.  To that end, "an injunction 'should be phrased in terms of objective actions, not legal conclusions.'" *Hope v. Warden*, 972 F.3d 310, 332 (3d Cir. 2020).

Plaintiffs request "an injunction requiring defendants to make out-of-state wineries eligible for [California] Winegrower licenses" and further request "[a]n injunction prohibiting the defendants from circumventing [the Court's] judgment by classifying direct sales from Plaintiffs to retailers pursuant to a Winegrower license as sales to an importer."  SAC Prayer for Relief b, e.  Plaintiffs' requested injunctions fail Rule 65(d)'s specificity requirement.  It is wholly unclear what

40

objective actions Defendants would have to take.  For example, under Plaintiffs' proposed injunctions, would ABC continue to make a "thorough investigation" of an out-of-state winery and its premises "to determine whether the applicant and the premises for which a license is applied qualify for a license and whether the provisions of [the ABC Act] have been complied with" before it issues a license, or must it waive that requirement for out-of-state wineries?  *Cf.* BPC § 23958.  What if ABC lacks the capacity or resources to conduct on-site investigations out of state?  What if the authorities in other States object to ABC's investigating a business within those sovereign States' borders, thereby preventing ABC from fulfilling its statutory thorough-investigation requirement?  Under Plaintiffs' proposed injunctions, would ABC still be able to deny a license application "if either the applicant or the premises for which a license is applied do not qualify for a license under this division" or "if issuance of that license would tend to create a law enforcement problem," or would ABC be stripped of that decision-making authority?  *Cf. id.*  Would every denial by ABC of an out-of-state winery's license application serve as the launching pad for an injunction-enforcement or contempt proceeding?  That Defendants must ask these and other questions itself answers the underlying Rule 65(d) question—Plaintiffs' proposed injunction compelling ABC to make out-of-state winegrowers eligible for California Winegrower licenses is too vague to satisfy Rule 65(d).  *See, e.g.*, *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1048 (9th Cir. 2013) (holding that injunction was too vague to satisfy Rule 65(d) where injunction terms invited obvious questions about what injunction required that injunction did not answer).

Plaintiffs also request an injunction that ABC issue California Winegrower licenses to them specifically.  SAC Prayer for Relief b.  Plaintiffs have advanced no evidence that they are eligible for such licenses or that they satisfy the requirements for such licenses.  Plaintiff Buckel does not even know what the requirements for a California Winegrower license are.  JAF 109.  And Plaintiff Dwinell, for its part,

1    does not satisfy the requirements for a California Winegrower license because,

2    among other things, it also makes beer on its winegrowing premises, using the same

3    equipment, and sells both at the same location, JAF 110-12—which is prohibited

4    under California law, BPC §§ 23355, 23358(a)(4), 25607(a); JAE Ex. 8 (Riegler

5    Decl.) ¶ 38—and thus it is not eligible for the license it wants the Court to grant it

6    via injunction.  This only further confirms how Plaintiffs' claims, and their

7    requested injunctions and relief, are improper.

8

9    **B.      Plaintiffs' Position: The Court should declare the ban
               unconstitutional and enjoin its enforcement**

10    Remedies are matters of equity, not law. The court has broad authority to

11    fashion a remedy that will provide suitable relief to plaintiffs. *Hecox v. Little,* 104

12    F.4th 1061, 1089 (9th Cir. 2024). When redressing a constitutional violation, the

13    remedy should be tailored to address the specific harm alleged and provide

14    complete relief. *Id.* The Court should therefore grant the following:

15    1. A declaratory judgment that 1) the denial of Type 02 Winegrower licenses

16    to out-of-state wineries by the ABC based on the fact that they have no physical

17    presence in California discriminates against out-of-state wineries in violation of the

18    Commerce Clause, and 2) the State has not presented sufficient evidence to justify

19    the discrimination as reasonably necessary to advance the State's interest in

20    protecting public health or safety.

21    2. An injunction to 1) prohibit the ABC from imposing an in-state presence

22    requirement on Winegrower licenses, 2) require the ABC to issue Winegrower

23    licenses to Plaintiffs and other out-of-state wineries if they meet the other

24    qualifications for that license, and 3) prohibit the ABC from indirectly prohibiting

25    out-of-state wineries with Winegrower licenses from selling to licensed California

26    retailers by applying BPC §23661(a) and other statutes related to Importers,

27    including. §§23017(a-b), 23026, 23374, 23374.6, 23375.6, 23393, 23394, 23661.5,

28    23667, 23668, and 23775.

42

1    Injunctive relief may be awarded when "the wrongs are ongoing or likely to

2    recur." *FTC v. Qualcomm Inc*., 969 F.3d 974, 1005 (9th Cir. 2020). Defendants

3    have ongoing intent to enforce the in-state presence requirement and the ban on

4    direct sales by out-of-state wineries, JAF 27, 41-42, so an injunction is appropriate.

5    Injunctive relief may extend to similarly situated nonparties if such breadth flows

6    naturally from the nature of the constitutional violation established. *East Bay*

7    *Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1255 (9th Cir. 2018). If the court

8    rules that the in-state presence requirement for Dwinell and Buckel is

9    unconstitutional, it would be equally unconstitutional for the ABC to apply it to

10    other out-of-state wineries, so Defendants should be enjoined from enforcing it

11    against any out-of-state winery.

12    Granting this remedy would not require the Court to rewrite California statutes

13    because the statutes do not contain any language restricting Winegrower licenses or

14    sales privileges to in-state wineries only. It would not affect California's ability to

15    require that any out-of-state winery that sells to retailers must obtain a Winegrower

16    license, remit taxes, and abide by other regulatory and reporting requirements.

17    Plaintiffs have testified that they would comply with them, JAF 74-75, and the

18    ABC can revoke their licenses if they do not – just like it does for in-state wineries.

19    3. An award of attorney's fees.

20                                **CONCLUSION**

21    **I.    Defendants' Conclusion**

22    For the foregoing reasons, Defendants respectfully request that the Court grant

23    summary judgment in their favor.

24    **II.    Plaintiffs' Conclusion**

25    For the foregoing reasons, this Court should grant summary judgment to

26    Plaintiffs.

27

28

Dated: March 4, 2025                        Respectfully submitted,

NELSON & FRANKEL LLP
EPSTEIN SEIF PORTER & BEUTEL LLP

/s/ James A. Tanford*
JAMES ALEXANDER TANFORD
ROBERT D. EPSTEIN
GRETCHEN M. NELSON
GABRIEL S. BERNFELD
*Attorneys for Plaintiffs Dwinell, LLC
and Buckel Family Wine LLC*

ROB BONTA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General

/s/ Shiwon Choe
SHIWON CHOE
ROBERT L. MEYERHOFF
CAROLYN F. DOWNS
Deputy Attorneys General
*Attorneys for Defendants Joseph
McCullough, in his official capacity as
Director of the Department of
Alcoholic Beverage Control, and Rob
Bonta, in his official capacity as
Attorney General of California*

* In accordance with Local Rule 5-4.3.4(a)(2)(i), the filer attests that all signatories have concurred in the filing of this document.

44

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 11-6.1 and the Court's Order re: Motions for Summary Judgment, ECF No. 74, undersigned counsel for Defendants certifies that Defendants' portion of this joint brief contains 6,992 words, and undersigned counsel for Plaintiffs certifies that Plaintiffs' portion of this joint brief contains 6,870 words, which comply with the parties' respective 7,000-word limits set forth in the Court's Order.

Dated:  March 4, 2025                Respectfully submitted,

NELSON & FRANKEL LLP
EPSTEIN SEIF PORTER & BEUTEL LLP

*/s/ James A. Tanford\**
JAMES ALEXANDER TANFORD
ROBERT D. EPSTEIN
GRETCHEN M. NELSON
GABRIEL S. BERNFELD
*Attorneys for Plaintiffs Dwinell, LLC and Buckel Family Wine LLC*


ROB BONTA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General

*/s/ Shiwon Choe*
SHIWON CHOE
ROBERT L. MEYERHOFF
CAROLYN F. DOWNS
Deputy Attorneys General
*Attorneys for Defendants Joseph McCullough, in his official capacity as Director of the Department of Alcoholic Beverage Control, and Rob Bonta, in his official capacity as Attorney General of California*

* In accordance with Local Rule 5-4.3.4(a)(2)(i), the filer attests that all signatories have concurred in the filing of this document.

Notices of Mots. and Joint Br. for Pls.' and Defs.' Mots. for Summary J. (No. 2:23-cv-10029-SB-KES)